PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 10-4012

TERRELL ALLEN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, District Judge.
(1:08-cr-00320-JFM-1)

Argued: October 27, 2010

Decided: January 21, 2011

Before KING and DUNCAN, Circuit Judges, and
Bobby R. BALDOCK, Senior Circuit Judge of the
United States Court of Appeals for the Tenth Circuit,
sitting by designation.

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Duncan and Senior Judge Baldock joined.

## COUNSEL

**ARGUED**: Gerald Chester Ruter, Towson, Maryland, for Appellant. Philip S. Jackson, OFFICE OF THE UNITED

STATES ATTORNEY, Baltimore, Maryland, for Appellee.
**ON BRIEF**: Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.

---

## OPINION

KING, Circuit Judge:

Defendant Terrell Allen appeals from his conviction in the District of Maryland for contravening 18 U.S.C. § 922(g)(1) by knowingly possessing ammunition after having been convicted of a felony. On appeal, Allen maintains that evidence used against him should have been suppressed and that he was erroneously denied a *Franks* hearing concerning a search warrant affidavit. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978) (holding that, in limited circumstances, accused is entitled to evidentiary hearing on veracity of search warrant affidavit). After the district court declined to suppress the evidence and denied his request for a *Franks* hearing, Allen entered a conditional guilty plea to a single § 922(g)(1) offense, reserving his right to appeal the court's adverse suppression rulings. As explained below, we affirm.

### I.

### A.

On July 9, 2008, a grand jury in the District of Maryland returned a single count indictment against Allen, charging that he had contravened 18 U.S.C. § 922(g)(1) by knowingly possessing a .44 caliber revolver after having been convicted of a felony (the "Firearm Offense"). A superseding indictment was returned on February 17, 2009, containing a second § 922(g)(1) count that charged Allen with knowingly possessing ammunition after having been convicted of a felony (the "Ammunition Offense"). The revolver underlying the Firearm

Offense was seized on May 15, 2008, during a warranted search of the Allen Family Appliance Store (the "AFA Store," or the "Store") located on North Gay Street in Baltimore, Maryland. The ammunition underlying the Ammunition Offense was seized two months later, during a warranted search of Allen's residence on Punjab Circle in Baltimore County.

Allen filed pretrial motions seeking suppression of the evidence underlying both counts of the superseding indictment, and also requesting that the district court conduct a *Franks* hearing on the veracity of information contained in the search warrant affidavit leading to the seizure of the revolver. After the court denied his suppression motions, Allen entered a conditional guilty plea — reserving his right to appeal the court's adverse suppression rulings.

B.

The events leading to the warranted seizures of the .44 revolver and the ammunition serve as the factual predicate of this appeal and are not in dispute. At approximately 6:00 p.m. on May 15, 2008, Baltimore police officers responded to calls relating to multiple shootings in the street outside the AFA Store, which was owned and operated by Allen and his family. Allen, along with his father, his half-brother, and a man named Reginald Davis, were apparently attending a barbeque outside the Store when the shootings occurred; all four were shot and taken to nearby hospitals. Allen and Davis survived, but Allen's father and half-brother died.

"Shooting detectives" of the Baltimore Police Department were the first officers to respond to the firefight near the AFA Store.[1] It was apparent to the shooting detectives that some of

---

[1]The Baltimore Police Department maintains separate detective units that investigate fatal versus non-fatal shootings. "Shooting detectives" are responsible for investigating nonfatal shootings, and "homicide detectives" are responsible for shootings that involve fatalities.

the victims would not survive, and they immediately requested the assistance of the homicide unit, which in turn dispatched "homicide detective" Gary Niedermeier to the scene. Niedermeier arrived at the chaotic scene outside the Store approximately twenty minutes after the homicide unit was called.

At the crime scene, Detective Niedermeier observed approximately twenty spent shell casings and fragments that were strewn about the area, indicating that multiple firearms had been discharged in the firefight. Niedermeier also observed several blood trails, one of which led directly into the AFA Store. He followed the blood trail inside the Store, which led to a filing cabinet. One of the cabinet's drawers was slightly ajar, and Niedermeier opened it and observed a silver revolver. He promptly relayed this information to the shooting detectives at the scene.

In the aftermath of these events, the Baltimore and federal authorities sought and obtained three separate search warrants: (1) the first warrant, issued on the evening of the firefight, authorized a search of the AFA Store for firearms and other evidence (the "First Warrant"); (2) the second warrant, issued on June 3, 2008, authorized the collection of Allen's DNA (the "Second Warrant"); and (3) the third warrant, issued on June 30, 2008, authorized the search of Allen's residence for firearms and other evidence (the "Third Warrant"). The .44 revolver underlying the Firearm Offense was seized during the search of the Store pursuant to the First Warrant, and the ammunition underlying the Ammunition Offense was recovered during the search of Allen's residence pursuant to the Third Warrant. The events surrounding the acquisition and execution of the three warrants is essential to a proper understanding of this appeal.

1.

On May 15, 2008, the date of the firefight, Baltimore Detective Chris Wade sought and obtained the First Warrant

from a state court judge. The First Warrant authorized the search of the AFA Store for firearms, DNA, and other evidence related to the shootings that occurred outside the Store. Wade had not personally been to the crime scene, and much of the information included in his affidavit had been relayed from officers on the scene. Wade's affidavit accurately described the multiple victims, the many shell casings, and various other aspects of the crime scene outside the Store. The affidavit also related the following:

> A blood trail was located going inside [the AFA Store] on the first floor and going up the steps to the second floor. On the first floor to the right of the blood trail laying in plain view on top of a file cabinet was a . . . handgun.

J.A. 36.[2] Based on Wade's affidavit, the First Warrant was issued and the search was executed at the Store on the evening of May 15, 2008, less than five hours after the firefight. During the search, the officers seized the .44 revolver from the filing cabinet, plus DNA samples.

### 2.

Three weeks later, on June 3, 2008, Detective Niedermeier sought and obtained the Second Warrant, also from a state court judge, authorizing the seizure of DNA samples from Allen. The affidavit supporting the Second Warrant detailed the chaotic scene outside the AFA Store following the shootings, and explained that the .44 revolver and DNA samples had been seized during the warranted search of the Store. The affidavit specified that Niedermeier had observed a silver revolver in a filing cabinet at the Store before the revolver was seized:

---

[2]Citations herein to "J.A. __" refer to the Joint Appendix filed by the parties in this appeal.

> [Y]our affiant located a blood trail which led from
> the initial scene into [the Store]. As your affiant fol-
> lowed the blood trail[,] it led to a four drawer filing
> cabinet . . . with the second drawer from the top
> slightly open. [Y]our affiant opened the drawer and
> observed a silver revolver . . . .

J.A. 60. The Second Warrant was executed on June 5, 2008,
and Allen's DNA was obtained. His DNA matched that found
on the revolver seized from the Store and, as a result, Allen
was charged with the Firearm Offense.

### 3.

On June 30, 2008, ATF Agent Noah Slackman sought and
obtained the Third Warrant, from a federal magistrate judge,
authorizing the search of Allen's residence for firearms and
related paraphernalia. Slackman's affidavit specified that the
home on Punjab Circle in Baltimore County was Allen's resi-
dence, detailed Allen's prior felony convictions, recounted the
May 15, 2008 crime scene (similar to the details in Nieder-
meier's affidavit supporting the Second Warrant), and indi-
cated that the DNA samples found on the .44 revolver
matched Allen's DNA. The principal basis for the search of
Allen's residence, however, was information provided by a
confidential informant (the "CI").[3] According to the CI, the
May 15, 2008 shootings had been committed by a gang of
Allen's drug distribution rivals, in retaliation for a kidnapping
orchestrated by Allen. The CI also explained that Allen had
"made statements that he intended to commit acts of violence
toward anybody related to [his rivals who committed the May
15 shootings], and in that regard members of [Allen's] gang

---

[3]Agent Slackman's affidavit specified that the CI referred to therein had
provided accurate information in the past, and the affidavit included an
example of the CI recently providing reliable information. Allen conceded
in the district court that Slackman's affidavit established the CI's reliabil-
ity.

have been and will be armed with weapons for that purpose." J.A. 72.

The federal magistrate judge issued the Third Warrant on June 30, 2008, and it was executed on July 1, 2008. A box of ammunition was seized from the Punjab Circle residence during the search, and, as a result, Allen was charged with the Ammunition Offense.

## C.

### 1.

In pretrial proceedings in the district court, Allen sought suppression of the evidence seized pursuant to the three search warrants. In regard to the .44 revolver and DNA recovered from the AFA Store, Allen maintained that Detective Niedermeier's opening of the cabinet drawer constituted an unconstitutional search not justified by any exception to the Fourth Amendment's warrant requirement, and that Niedermeier's observation of the silver revolver in the drawer prompted the decision of the authorities to seek the First Warrant. Thus, Allen asserted that the revolver and DNA (seized pursuant to the First Warrant), as well as Allen's DNA (obtained pursuant to the Second Warrant), should be suppressed. Additionally, Allen maintained that the conflicts between Detective Wade's affidavit supporting the First Warrant and Niedermeier's affidavit supporting the Second Warrant — that is, the revolver being in plain view (according to Wade) but inside a closed filing cabinet drawer (according to Niedermeier) — justified a *Franks* hearing. Finally, Allen sought to suppress the ammunition seized from his Punjab Circle residence because Agent Slackman's affidavit supporting the Third Warrant was tainted by the constitutional infirmities of the First and Second Warrants. Allen also asserted that the affidavit failed to show a nexus between the Punjab Circle residence and the items to be seized, and that the affidavit failed to establish probable cause.

In responding to the Allen's suppression motions, the prosecution conceded that Niedermeier "went outside the scope of the exigent circumstances exception to the warrant requirement" by opening the filing cabinet drawer in the AFA Store. J.A. 43. The prosecution maintained, however, that suppression of the revolver was not warranted because it would have been discovered inevitably in any event. The prosecution also maintained that a *Franks* hearing was not required because Wade's affidavit — which accurately described the crime scene and blood trails leading into the AFA Store — provided sufficient probable cause for the First Warrant, even with the statements about the revolver excised. Finally, the prosecution contended that Agent Slackman's affidavit provided ample probable cause for issuance of the Third Warrant.

2.

On May 15, 2009, the district court conducted a hearing on Allen's suppression motions. The prosecution called Detective Niedermeier to testify, and he related that he had arrived at the crime scene about twenty minutes after the responding officers requested assistance from the homicide unit. Niedermeier described the chaotic scene of the shootings and recounted following a blood trail into the AFA Store. Niedermeier explained that he did not know whether other officers had already been inside the Store, but that his duties include searching a crime scene for victims and suspects. He agreed, however, that he followed the blood trail into the Store to gather evidence and to determine "what had happened because these four individuals had been shot." J.A. 92. Niedermeier explained that the silver revolver was observed inside a cabinet drawer, and was not in plain view as stated in Detective Wade's affidavit. Niedermeier also said, however, that he had never spoken directly to Wade about the revolver and had advised the other officers at the scene "just generally" about it. *Id.* at 93.

After Detective Niedermeier testified, the district court denied Allen's motion to suppress the .44 revolver, as well as

his request for a *Franks* hearing. The court explained that such relief was not warranted because the revolver would inevitably have been found and the "inevitable discovery rule trumps." J.A. 102. The court explained that "clearly you've got a shooting scene there, you've got blood going inside, clearly what you're going to do is get a warrant. And that would have happened, and the gun would have been found." *Id.* at 100. Furthermore, and even if "you excise all [references to the revolver in Detective Wade's affidavit] it seems to me that you still got probable cause." *Id.* at 101. After this ruling, Allen conceded that "if the [F]irst [W]arrant stands, then quite obviously the [S]econd [W]arrant would stand as well." *Id.* at 102.

Moving to the Third Warrant, Allen requested suppression of the ammunition seized during the warranted search of his Punjab Circle residence. Allen maintained that the information supplied by the CI in Agent Slackman's affidavit constituted "puffing," and that the affidavit was facially insufficient to show probable cause for a search of the Punjab Circle residence. J.A. 106. From the bench, the district court denied Allen's motion to suppress and concluded that Slackman's affidavit contained sufficient probable cause for issuance of the Third Warrant:

> [I]t seems to me there's ample probable cause. I mean, you've got the fact of the shootings. You've got, in the streets of Baltimore, you had four people shot, two people killed in that shooting, two other people injured. You've got the DNA matching. You've got the firearm . . . . I don't think it's puffing. I wish it were puffing in the city of Baltimore, it's not. . . . [T]here was probable cause to believe that Mr. Allen had a firearm, wherever he was, in his residence. And as I say there was a particular history of violence leading to this, which was the alleged kidnapping. Then the shooting . . . . And I think, frankly, the officers did exactly the right thing and

[the issuing magistrate judge] did exactly the right thing in signing the warrant.

*Id.* 107-08.

On September 1, 2009, after his suppression motions and request for a *Franks* hearing had been denied, Allen entered a conditional guilty plea to the Ammunition Offense. The plea agreement preserved Allen's right to appeal the district court's adverse suppression rulings. On December 17, 2009, the court sentenced Allen to forty-eight months in prison and three years of supervised release.[4]

Allen has timely noted this appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We assess de novo the legal determinations underlying a district court's suppression rulings, including the denial of a *Franks* hearing, and we review the court's factual findings relating to such rulings for clear error. *See United States v. Blatstein*, 482 F.3d 725, 730 (4th Cir. 2007). A determination of probable cause is an issue of law that is reviewed de novo. *See United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996).

## III.

On appeal, Allen makes three contentions. First, he maintains that the district court erred in denying his request for a *Franks* hearing on the inaccurate statements contained in Detective Wade's affidavit supporting the First Warrant. Second, he asserts that the First Warrant is void because Detective Niedermeier's warrantless entry into the AFA Store was

---

[4]Pursuant to the plea agreement between Allen and the Government, the prosecution dismissed the Firearm Offense.

not justified by exigent circumstances.[5] Finally, Allen contends that Agent Slackman's affidavit supporting the Third Warrant was insufficient to justify a probable cause finding, and that the good faith exception to the exclusionary rule, *see United States v. Leon*, 468 U.S. 897 (1984), does not apply. We assess Allen's contentions in turn.

### A.

Allen contends that the district court erred in denying his request for a *Franks* hearing. More specifically, he maintains that the inaccurate statements in Detective Wade's affidavit supporting of the First Warrant — i.e., that the firearm in the AFA Store was in "plain view" — were included intentionally or recklessly. With those statements excised, according to Allen, the affidavit would not support a probable cause determination.

An accused is generally not entitled to challenge the veracity of a facially valid search warrant affidavit. In its decision in *Franks v. Delaware*, however, the Supreme Court carved out a narrow exception to this rule, whereby an accused is entitled to an evidentiary hearing on the veracity of statements in the affidavit. *See* 438 U.S. 154, 155-56 (1978). To be entitled to a *Franks* hearing, however, the accused must make a substantial preliminary showing that false statements were either knowingly or recklessly included in an affidavit supporting a search warrant *and* that, without those false statements, the affidavit cannot support a probable cause finding. *See id.* Therefore, if the allegedly false statements are not necessary for the probable cause finding, the accused is not entitled to a *Franks* hearing. *See id.*

---

[5]As a corollary to his contention that Detective Niedermeier's initial entry into the AFA Store was unconstitutional, Allen contends that the Second and Third Warrants are tainted by this illegal entry and that any evidence seized pursuant to those warrants was fruit of the poisonous tree. *See United States v. Lentz*, 524 F.3d 501, 522 (4th Cir. 2008).

As we have recognized, the concept of probable cause is not subject to a precise definition. *See United States v. Richardson*, 607 F.3d 357, 369 (4th Cir. 2010). Nevertheless, the Supreme Court has explained that probable cause plainly "exist[s] where the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). An assessment of the presence of probable cause must be based on the totality of the relevant circumstances, rather than on the technical or rigid demands of a formulaic legal test. *See Illinois v. Gates*, 462 U.S. 213, 230-31 (1983); *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990). In making a probable cause assessment, a judicial officer must simply make "a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.

Applying the foregoing principles, it is apparent that the inaccurate statements in Detective Wade's affidavit about the revolver in the AFA Store being in plain view were unnecessary to the probable cause determination. Assuming that Wade falsely or recklessly made those statements and sought to mislead the state court judge, his affidavit nevertheless makes an ample showing of probable cause for issuance of the First Warrant. Specifically, the affidavit described the chaotic scene of the quadruple shootings in the street near the AFA Store, which was littered with shell casings and fragments, and multiple blood trails (including the trail leading inside the Store). This information alone — without reference to the revolver observed in the filing cabinet — is sufficient to establish probable cause that evidence related to the shootings would probably be found inside. Because any inaccurate statements in Wade's affidavit were unnecessary for the prob-

able cause finding, the district court did not err in denying Allen's request for a *Franks* hearing.[6]

### B.

Next, Allen maintains that the .44 revolver should have been suppressed because Detective Niedermeier's initial entry into the AFA Store — following a trail of blood — was unconstitutional. Allen argues that Niedermeier's testimony at the suppression hearing indicates that the true motivation behind his initial entry into the Store was to gather evidence, rather than look for other victims or suspects. Allen contends that, because Niedermeier's initial entry was unconstitutional, everything in Detective Wade's affidavit that flowed from the illegal entry — the revolver and the locations of the trails of blood inside the Store — should be excised from the affidavit. Allen asserts that when such information is excised, the affidavit is facially deficient and the revolver must be suppressed. This contention, however, suffers from the same infirmities as Allen's contention regarding his entitlement to a *Franks* hearing.

Even if Detective Niedermeier's initial entry into the AFA Store was unconstitutional, the evidence seized under the First Warrant need not be suppressed, because "sufficient untainted evidence was presented in the [First W]arrant affidavit to establish probable cause," rendering the warrant valid. *United States v. Karo*, 468 U.S. 705, 719 (1984). Detective Wade's affidavit — purged of all information garnered by Niedermeier's entry into the store — yet details the chaotic scene of a quadruple shooting in the streets of Baltimore, and relates

---

[6]Allen also contends that the district court did not rule that Detective Wade's affidavit, purged of the inaccurate statements, was sufficient to support the issuance of the First Warrant. The court ruled, however, that when "you excise all [the references to the revolver in Wade's affidavit] it seems to me that you still got probable cause." J.A. 101. As such, we readily reject Allen's contention.

that "a blood trail was located going inside" the Store. J.A. 26. Those circumstances — standing alone — provide probable cause for a search of the Store.[7] Thus, even if Niedermeier's initial entry into the Store was improper and all information gained from that entry was "tainted," the affidavit supporting the First Warrant contains sufficient untainted information to show probable cause for issuance of the First Warrant. The district court, therefore, did not err in declining to suppress the evidence seized during the execution of the First Warrant.

C.

In his final appellate contention, Allen argues that the district court erred in declining to suppress the ammunition seized from his Punjab Circle residence. Allen contends that the ammunition seized under the Third Warrant is inextricably intertwined to his claim that the revolver should have been suppressed. Allen contends that much of the information included in Agent Slackman's affidavit — principally the silver revolver seized at the AFA Store and linked to Allen — is constitutionally tainted and must be excised. Such an assertion fails, however, because the revolver was legally seized. Thus, Allen's contention that Slackman's affidavit is defective because it contains constitutionally tainted information must be rejected.

Allen makes three additional points concerning the Third Warrant: (1) that Slackman's affidavit for the Third Warrant fails to support a probable cause finding; (2) that the information supplied the by CI was not sufficiently corroborated; and

---

[7]In connection with the First Warrant, the district court essentially reached this very conclusion when it explained: "[C]learly you've got a shooting scene there, you've got blood going inside, clearly what you're going to do is get a warrant." J.A. 100. Detective Niedermeier's entry into the AFA Store does nothing to taint the information about the crime scene and the blood trail leading inside the store, which are included in Detective Wade's affidavit and are, standing alone, sufficient to establish probable cause to search the Store.

(3) that the affidavit did not show a nexus between the Punjab Circle residence and the items to be seized. As explained above, however, a judicial officer issuing a search warrant must simply make a practical, commonsense determination — based on the totality of the circumstances revealed in the affidavit — of whether there is a substantial likelihood that evidence of a crime will be found in a particular place. *See Gates*, 462 U.S. at 230-31; *United States v. Grossman*, 400 F.3d 212, 217 (4th Cir. 2005). Additionally, "the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." *Richardson*, 607 F.3d at 371 (internal quotation marks omitted). In assessing the probable cause determination concerning the Third Warrant, we accord great deference to the issuing judge's assessment of the facts presented. *See Gates*, 462 U.S. at 238; *Grossman*, 400 F.3d at 217.

Put simply, Agent Slackman's affidavit supporting the Third Warrant provided probable cause to believe that Allen possessed firearms at his Punjab Circle residence. The affidavit related that Allen was a convicted felon; that Allen resided at the Punjab Circle residence; that two members of Allen's family had been killed in the May 15, 2008 shootings on Gay Street; and that a revolver containing Allen's DNA was recovered at the scene. Importantly, the affidavit also contained information from a reliable CI that the shootings had been committed by Allen's drug rivals in response to a kidnapping, and that Allen and his supporters were armed to do violence against the perpetrators of the shootings. Indeed, Allen has conceded that Slackman's affidavit established the reliability of the CI. *See* J.A. 103; Br. of Appellant 19.

According appropriate deference to the magistrate judge who issued the Third Warrant, Agent Slackman's affidavit establishes probable cause for a search of the Punjab Circle residence for firearms, and thus the nexus between the place to be searched and the items to be seized was established.

Accordingly, we reject Allen's contention that the district court erred by denying his motion to suppress the ammunition underlying his conviction on the Ammunition Offense.[8]

## IV.

Pursuant to the foregoing, we reject Allen's appellate contentions and affirm.

*AFFIRMED*

---

[8]Because the Third Warrant is not defective, we need not reach or address Allen's contention concerning the inapplicability of the good faith exception to the exclusionary rule.