**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 10-4183

UNITED STATES OF AMERICA,

                    Plaintiff – Appellee,

          v.

COREY CHRISTOPHER FELDER,

                    Defendant – Appellant.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.    Catherine C. Blake, District Judge.
(1:09-cr-00306-CCB-1)

Argued:  September 23, 2011          Decided:  December 13, 2011

Before MOTZ, KEENAN, and DIAZ, Circuit Judges.

Affirmed by unpublished opinion.   Judge Diaz wrote the opinion,
in which Judge Motz and Judge Keenan joined.

**ARGUED:**  Lisa  Jo  Sansone,  Baltimore,  Maryland,  for  Appellant.
Peter Marshall Nothstein, OFFICE OF THE UNITED STATES ATTORNEY,
Baltimore, Maryland, for Appellee.  **ON BRIEF:**  Warren A. Brown,
LAW  OFFICE  OF  WARREN  A.  BROWN,  Baltimore,  Maryland,  for
Appellant.    Rod  J.  Rosenstein,  United  States  Attorney,
Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Corey Christopher Felder pleaded guilty to one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a), and one count of possession of a firearm in furtherance of a drug trafficking offense, in violation of 21 U.S.C. § 924(c). Felder reserved the right to appeal the denial of a pretrial motion to suppress. On appeal, Felder contends the district court erred by failing to suppress evidence obtained from a series of searches conducted at two apartments he occupied. We find the searches were lawful and therefore affirm.

I.

A.

Early in the morning on July 10, 2008, officers from the Maryland Division of Parole and Probation went to Apartment 707 at 601 North Eutaw Place, Baltimore, Maryland ("601 N. Eutaw") to execute a parole retake warrant for Felder's brother, Martin Felder. Martin Felder had reported to his parole officer that 601 N. Eutaw was his place of residence. Officers entered the apartment at approximately 7:00 a.m. to execute the arrest warrant but found no one inside. While searching the apartment for Martin Felder, officers observed two boxes of .50 caliber ammunition in plain view.

2

A maintenance worker at the apartment building confirmed that Martin Felder lived at 601 N. Eutaw and described his two vehicles to officers. Officers observed that neither vehicle was present that morning. A second employee told officers that Corey Felder was the sole lessee of 601 N. Eutaw and that Corey and Martin Felder were in the process of moving out.

Officers relayed their findings to Detective Sergeant Allen Meyer of the Baltimore County Police Department who, in turn, applied for and obtained a search warrant for 601 N. Eutaw. The application for the warrant averred that there was probable cause to believe that Martin Felder, who was a convicted felon, possessed ammunition in violation of state and federal law. Although the application and affidavit correctly identified the place to be searched and items to be seized, the search warrant itself contained several errors. First, the warrant incorrectly listed the place to be searched as "8601 N. Eutaw." Next, in reciting the basis for probable cause, the warrant misstated the caliber of the ammunition identified by officers—referring to it as .25 caliber rather than .50 caliber. The probable cause section of the warrant also referred to an individual with no connection to the instant case, Jamie Lee Overton, as the subject of the search. Finally, the list of items subject to seizure referred to a second individual, David Paul Frederick, who also had no involvement in the case. Despite the errors,

3

the warrant correctly identified the apartment number and stated that it was occupied by Martin Felder.

Early in the evening on July 10, Meyer and other officers executed the search warrant at 601 N. Eutaw. They discovered several boxes of ammunition, a bag containing six smaller baggies of marijuana, a bag containing cocaine, an identification card for Martin Felder, a work identification card for Corey Felder covered in suspected cocaine residue, and mail addressed to both Felders. Officers also discovered a rental truck receipt that indicated Corey Felder had moved to a different apartment building in Baltimore located at 511 West Pratt Street.

Following the search, Meyer went to 511 West Pratt Street to investigate. There he learned that Corey Felder had recently rented and moved in to 511 West Pratt Street, Apartment 1607 ("511 W. Pratt"). Detective Ryan Guinn and other officers went to the apartment door and knocked several times with no answer. Guinn smelled what he believed to be the strong odor of marijuana, and he and the other officers thought they heard movement from within the apartment. Officers obtained a key from building management and entered 511 W. Pratt. They discovered no one inside but did see in plain view a plastic bag containing marijuana and two handguns. Officers then secured the apartment while Guinn left to obtain a search warrant.

4

In his affidavit seeking the search warrant, Guinn first summarized the evidence discovered by officers during the earlier search at 601 N. Eutaw, including the ammunition, bags of marijuana, cocaine residue on Corey Felder's identification card, and truck rental receipt that led officers to 511 W. Pratt. Next, Guinn described the officers' observations when they arrived at 511 W. Pratt, including that they smelled marijuana and heard movement as they stood outside the apartment. Finally, Guinn stated that officers saw marijuana and handguns in plain view after entering the apartment. The judge's signature indicated the warrant for 511 W. Pratt issued at 7:31 p.m.

With the search warrant for 511 W. Pratt in hand, officers seized the firearms and marijuana discovered in plain view. Additionally, officers found a carry bag containing approximately 325 grams of heroin and digital scales, a safe containing approximately $71,000 in cash, and a box of 9 mm ammunition. The return for the warrant noted that the search of 511 W. Pratt took place at 7:10 p.m.

While officers were executing the search warrant, Corey Felder arrived at 511 W. Pratt. Officers immediately placed Felder under arrest and advised him of his Miranda[1] rights.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

5

Felder stated that he understood his rights and proceeded to answer questions without requesting an attorney. Felder confirmed that he had leased the apartment at 511 W. Pratt. He also told officers that he had not been selling drugs long and that he was not afraid of retaliation for losing the drugs because they "were paid for." J.A. 97.

B.

Felder was charged in a superseding indictment with the following four counts: Count One, possession with intent to distribute cocaine or cocaine base, in violation of 21 U.S.C. § 841(a)(1); Count Two, conspiracy to possess with intent to distribute heroin, cocaine, or cocaine base, in violation of 21 U.S.C. § 846; Count Three, possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1); and Count Four, possession of a firearm in furtherance of a drug trafficking crime, in violation of 21 U.S.C. § 924(c).[2]

Prior to trial, Felder moved to suppress all unlawfully seized evidence and all involuntary statements or admissions. At the suppression hearing, Felder challenged the searches at both apartments. Felder argued that the search warrant for 601

_____

[2] Several of Felder's charges stemmed from evidence obtained from a confidential informant who purchased cocaine from Felder. We do not recite those facts here, however, because Felder has not challenged his conviction on those counts.

6

N. Eutaw contained numerous errors and was therefore invalid, and that there were no exigent circumstances justifying the warrantless entry of 511 W. Pratt, which in turn tainted the second search warrant.[3]

The district court concluded that the searches were lawful. The court found that the errors in the search warrant for 601 N. Eutaw resulted from "careless[ness] with [a] word processor" but nevertheless held that the search was "valid" because the application for the search contained "the specific accurate information on which the search was based."  J.A. 47.  With respect to the search of 511 W. Pratt, the court did not reach the issue of exigent circumstances but instead ignored references to what officers saw when they first entered the apartment.  The court concluded that even without that information there was sufficient evidence to support a finding of probable cause.  Accordingly, the court denied Felder's motion.

Felder entered a conditional plea of guilty to Counts One and Four of the superseding indictment, reserving his right to appeal the denial of his motion to suppress.  The district court

---

[3] Felder also noted an objection to admission of the statements he made to officers following his arrest.  The district court reserved ruling on the issue but later dismissed the claim in a brief order.

sentenced Felder to 120 months on Count One and 60 months on Count Four to run consecutively. Felder timely appealed.

## II.

On appeal, Felder contends that (1) the initial entry of 601 N. Eutaw was unlawful because officers lacked a reasonable belief Martin Felder was there; (2) the search warrant for 601 N. Eutaw contained numerous errors and was therefore invalid; (3) the search of 511 W. Pratt was unlawful because there were no exigent circumstances justifying the initial entry and the subsequently obtained search warrant was invalid; and (4) Felder's statements to officers were the product of an unlawful arrest and were therefore involuntary. We consider each of Felder's claims in turn, reviewing the district court's factual findings for clear error and legal conclusions de novo. United States v. Blauvelt, 638 F.3d 281, 287 (4th Cir. 2011) (citing United States v. Blake, 571 F.3d 331, 338 (4th Cir. 2009)).

## A.

Felder contends that the officers' entry into 601 N. Eutaw to execute the arrest warrant for Martin Felder was unlawful and that it tainted the subsequent searches. According to Felder, officers did not have reason to believe Martin Felder was at the

apartment the morning of July 10, 2008. We disagree and conclude the officers' entry was lawful.

Officers may enter a home "without a search warrant in order to execute an arrest warrant only if 'there is reason to believe [that the subject of the warrant] is within.' " United States v. Hill, 649 F.3d 258, 262 (4th Cir. 2011) (quoting Payton v. New York, 445 U.S. 573, 602 (1980)). If officers possess the requisite reasonable belief to enter a residence, they may search any place within that residence where the suspect might be found. United States v. Green, 599 F.3d 360, 375–76 (4th Cir. 2010) (citing Maryland v. Buie, 494 U.S. 325, 332-33 (1990)). To determine whether officers may lawfully enter a residence to execute an arrest warrant, we apply a two-part test that evaluates "(1) whether there is reason to believe that the location is the defendant's residence, and (2) whether or not there was a reasonable belief that he would be home." Hill, 649 F.3d at 262 (citations omitted).

We consider first whether officers had reason to believe that Martin Felder was a resident of 601 N. Eutaw. Officers initially went to 601 N. Eutaw because Martin Felder reported it as his place of residence to parole officials. Parolees are obligated to provide parole officers accurate, up-to-date information regarding their place of residence. Accordingly, we find that officers had reason to believe that 601 N. Eutaw was

9

Martin Felder's residence. See United States v. Thomas, 429 F.3d 282, 286 (D.C. Cir. 2005) (concluding officers' belief as to residency was reasonable because "[as] a condition of his parole, [the defendant] was required to keep his current address on file with his parole supervision officer"); United States v. Lovelock, 170 F.3d 339, 344 (2d Cir. 1999) (emphasizing "that probationers are required to report to their probation officers any change of residence" as a key factor supporting officers' reasonable belief).

We next consider whether officers had reason to believe Martin Felder was home on the morning of July 10 when they arrived at 601 N. Eutaw to execute the arrest warrant. The government relies on the early hour to support the officers' reasonable belief. Felder counters that the officers could not reasonably believe his brother was home that morning because information obtained from apartment workers suggested otherwise.

Courts routinely rely on the time of day as a key factor in determining whether officers could reasonably believe the subject of an arrest warrant was home. E.g., United States v. Edmonds, 52 F.3d 1236, 1248 (3d Cir. 1995), vacated on other grounds, 80 F.3d 810 (3d Cir. 1996) (reasoning that 6:45 a.m. was "early enough that it was unlikely someone living in the apartment would have already departed for the day"). The Eleventh Circuit has noted that "officers may presume that a

10

person is home at certain times of the day—a presumption which can be rebutted by contrary evidence regarding the suspect's known schedule." United States v. Magluta, 44 F.3d 1530, 1535 (11th Cir. 1995); see also United States v. Bervaldi, 226 F.3d 1256, 1267 (11th Cir. 2000) ("It was reasonable to believe, in the absence of contrary evidence, that [the suspect] would be at his residence at 6:00 in the morning."). Similarly, the D.C. Circuit has concluded, without citing any other factors, that "the early morning hour was reason enough" for officers to believe a defendant was home when they attempted to execute an arrest warrant between 6:00 and 6:30 a.m. Thomas, 429 F.3d at 284, 286.

Based on these authorities, we find that it was reasonable for officers to believe, absent contrary evidence, that Martin Felder was home at 7:00 a.m. on the morning of July 10. Felder contends, however, that the officers had such contrary evidence because they knew that the apartment was not leased to Martin Felder, that Martin Felder's cars were not in the parking lot, and that workers at the apartment building told the officers that Martin Felder had moved out. The government responds that the warrant and affidavit show that the officers learned these facts from the apartment workers after the initial entry.

11

Because Felder did not request a <u>Franks</u>[4] hearing to challenge the officers' statements in the warrant affidavit, the district court accepted them as true.

Although the affidavit does not explicitly delineate the chronology, the description of the officers' initial entry appears prior to the summary of their discussions with the apartment workers. Accordingly, the logical inference is that the officers learned that Martin Felder's cars were not at the apartment complex and that he had recently moved out, after their initial entry into the apartment. See <u>United States v. Branch</u>, 537 F.3d 328, 337 (4th Cir. 2008) (explaining that where the district court denies a defendant's motion to suppress, we construe the evidence in the light most favorable to the government) (citing <u>United States v. Uzenski</u>, 434 F.3d 690, 704 (4th Cir. 2006)).

We therefore hold that officers had reason to believe both that Martin Felder lived at 601 N. Eutaw and that he was home at 7:00 a.m. on July 10. Accordingly, the officers' initial entry into the apartment at 601 N. Eutaw was lawful and did not taint the subsequent searches.

---

[4] <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).

In the alternative, Felder argues that even if the initial entry into 601 N. Eutaw was lawful, the search warrant contained so many errors that it was invalid and could not be relied on by a reasonable officer. Felder notes that the warrant incorrectly identified the caliber of the ammunition observed by the officers in plain view, misstated the address of the apartment, and referred to two individuals with no connection to the instant case. The district court determined that these errors were the result of drafters who were "careless with their word processor" but nevertheless concluded that the search warrant was valid. J.A. 47. We agree.

The Warrant Clause of the Fourth Amendment requires any warrant to "particularly describe[] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A search warrant satisfies the particularity requirement if the description enables an officer to ascertain and identify the place to be searched with reasonable effort. United States v. Owens, 848 F.2d 462, 463 (4th Cir. 1988). Accordingly, "[a]n erroneous description . . . does not necessarily invalidate a warrant and subsequent search." Id. Furthermore, we have held that "[a]s a general rule, a supporting affidavit or document may be read together with (and considered part of) a warrant that otherwise lacks sufficient particularity 'if the warrant

uses appropriate words of incorporation, and if the supporting document accompanies the warrant.' " United States v. Hurwitz, 459 F.3d 463, 470–71 (4th Cir. 2006) (quoting Groh v. Ramirez, 540 U.S. 551, 557–58 (2004)).

Here, despite the typographical errors, the warrant for 601 N. Eutaw correctly described Apartment 707 as the place to be searched and identified Martin Felder as a resident. The warrant also expressly incorporated and attached the affidavit filed in support of the search warrant. And unlike the warrant, the affidavit correctly stated the address of 601 N. Eutaw. Thus, although the warrant was not prepared with care, it, along with the incorporated affidavit, was sufficient to enable officers to identify the place subject to search and items subject to seizure. Accordingly, the warrant satisfied the Fourth Amendment and was valid.

C.

With respect to the search of 511 W. Pratt, Felder contends that the officers' initial entry was not justified by exigent circumstances and that the unlawful entry tainted the subsequently obtained warrant. We need not reach the issue of exigent circumstances, however, because the warrant was supported by probable cause even without the evidence obtained as a result of the officers' initial entry.

14

The determination by a judicial officer to issue a warrant on probable cause involves "a practical commonsense decision whether, given all the circumstances[,] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). When a warrant is supported in part by evidence obtained in an unlawful search, we routinely exclude that evidence and consider whether probable cause exists based on the remaining facts. E.g., United States v. Allen, 631 F.3d 164, 173 (4th Cir. 2011). Under this approach, a warrant is valid if after excising the unlawfully obtained evidence, there is "sufficient untainted evidence . . . to establish probable cause." Id. (quoting United States v. Karo, 468 U.S. 705, 719 (1984)); United States v. Moses, 540 F.3d 263, 271 (4th Cir. 2008).

Probable cause for the 511 W. Pratt search warrant was based both on the prior search at 601 N. Eutaw and evidence from the initial entry at 511 W. Pratt. The first two paragraphs of the affidavit recounted the evidence recovered from the search at 601 N. Eutaw, including the ammunition, drugs, identification cards, and truck rental receipt that led officers to 511 W. Pratt. The third paragraph highlighted the circumstances that led to the officers' initial entry at 511 W. Pratt, including the smell of marijuana and sound of movement from within the

15

apartment.  Finally, the third paragraph described the marijuana and handguns that officers observed in plain view after entering the apartment.

Like the district court, we need not consider whether exigent circumstances justified the officers' initial warrantless entry into 511 W. Pratt.  Even after excising the third paragraph describing the results of the initial entry, the affidavit for 511 W. Pratt contained sufficient evidence to establish probable cause.  The affidavit averred that officers seized evidence of drugs and weapons from 601 N. Eutaw, collected evidence tying Felder to the contraband, suspected Felder had moved to 511 W. Pratt based on the truck rental receipt, and confirmed with building management that he had recently rented the apartment.  Based on this information alone, there was probable cause to believe officers would locate evidence of criminal activity at 511 W. Pratt.  Cf. United States v. Grossman, 400 F.3d 212, 218 (4th Cir. 2005) ("[I]t is reasonable to suspect that a drug dealer stores drugs in a home to which he owns a key.").

Felder nevertheless contends for the first time on appeal that no reasonable officer could have believed the warrant for 511 W. Pratt was valid because it was signed following execution of the search.  Felder points out that the note in the judge's signature block for the 511 W. Pratt search warrant indicated it

16

was signed at 7:31 p.m., while the return stated that the search occurred at 7:10 p.m. According to Felder, this discrepancy proves officers executed an unsigned warrant. We disagree.

Because Felder did not raise this issue in the district court, we review for plain error, which requires Felder to demonstrate an error that is plain and affects substantial rights. United States v. Claridy, 601 F.3d 276, 285 (4th Cir. 2010). The discrepancy in the time notations could very well have been clerical in nature. In any event, because Felder did not alert the district court to the issue, it did not receive testimony or make any specific findings. There is no question, however, that a judge ultimately signed the warrant and that it was supported by probable cause. Accordingly, we find no plain error and hold that the warrant was valid.

## D.

Finally, Felder contends that the statements he made to officers following his arrest were tainted by the illegal search and must be suppressed. Felder concedes that officers administered Miranda warnings and that his statements were not otherwise involuntary. Because we conclude that the searches were lawful, we reject Felder's argument and hold that his statements were voluntary.

17

## III.

For the foregoing reasons, we affirm the judgment of the district court.

<u>AFFIRMED</u>