**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

      *Plaintiff-Appellee,*

v.

COLLIN MCKENZIE-GUDE,

      *Defendant-Appellant.*

No. 10-4119

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, Senior District Judge.
(8:08-cr-00518-PJM-1)

Argued: October 27, 2011

Decided: December 16, 2011

Before MOTZ, KING, and DUNCAN, Circuit Judges.

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge King and Judge Duncan joined.

## COUNSEL

**ARGUED:** Gary Eugene Bair, BENNETT & BAIR, LLC, Greenbelt, Maryland, for Appellant. Arun G. Rao, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee. **ON BRIEF:** Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, Bryan E. Foreman,

Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

Collin McKenzie-Gude pled guilty under a conditional plea agreement to knowing possession of a firearm not registered to him, in violation of 26 U.S.C. § 5861(d). In doing so, he reserved his right to challenge the district court's refusal to suppress evidence seized from his home pursuant to a warrant or to grant a hearing to determine the veracity of the affidavit that provided the basis for that warrant. McKenzie-Gude appeals those rulings and also challenges his below-Guidelines sentence of sixty-one months incarceration. For the reasons set forth within, we affirm the district court in all respects.

I.

On July 23, 2008, Ludmila Yevsukov went to a police station in Montgomery County, Maryland to report that her nephew, Patrick Yevsukov, had told her that McKenzie-Gude brought an AK-47 style assault rifle to the Yevsukov residence on July 21, 2008. Ms. Yevsukov further informed the police that the rifle belonged to McKenzie-Gude's father, Joseph Gude. A police officer then contacted Joseph Gude, who confirmed he had purchased an AK-47 rifle. Four days later, on July 27, Ms. Yevsukov provided additional information in a letter she addressed to the police department. In the letter, she asserted that McKenzie-Gude was 18 years of age, lived at 6312 Rockhurst Road in Bethesda, Maryland (the "Rockhurst Road residence"), and had just graduated from St. John's College High School in Washington, D.C. She further advised the police that her nephew, Patrick, was an intern with the Montgomery County Police Department.

In her letter, Ms. Yevsukov asserted that McKenzie-Gude "constantly discuss[ed] weapons and explosives with Patrick" and had brought "dangerous chemicals" to the Yevsukov residence. Ms. Yevsukov reported that she had found and removed from Patrick's bedroom these chemicals and "safety data sheets" describing the chemicals. She attached to her letter the data sheets and a confidential St. John's College faculty list containing home addresses and phone numbers that she asserted McKenzie-Gude and Patrick had improperly obtained. She also attached to the letter fifteen pages of blank Montgomery County Police Department letterhead, which Ms. Yevsukov believed Patrick had obtained for McKenzie-Gude to "purchase restricted firearms," because she had found the letterhead with a photocopy of instructions for opening a gun safe.

On July 29, 2008, McKenzie-Gude drove Patrick Yevsukov to the local police station where Montgomery County police officers interviewed both of them. The officers obtained a signed statement from Patrick in which he stated that "to [his] knowledge" McKenzie-Gude never brought a gun to the Yevsukov residence. After McKenzie-Gude requested an attorney, the officers released him without obtaining any statement from him.

Later that day, Montgomery County Detective Edward Zacarek and Montgomery County Fire Marshal Jeffrey Ewart completed an application for a warrant to search the Rockhurst Road residence. The application describes the officers' experience, including that Zacharek, a 12-year veteran with the police department, had extensive experience investigating "firearms related crimes" and executing firearms-related search warrants, and that Ewart, a firefighter for nine years and fire marshal for six months, was "currently assigned to the arson and explosive unit" and had "training and experience with identification of explosive and destructive devices." The application describes with particularity McKenzie-Gude's suspected criminal activity and the items sought; in

the space provided for the place "to be searched," the application identifies the Rockhurst Road residence and describes its appearance.

The affidavit provides the following details from the police investigation:

> On 07/23/08, Ludmila Yevsukov responded to the Gaithersburg City Police station to report that her nephew Patrick Yevsukov and his friend Colin[1] McKenzie-Gude brought an AK-47 style assault rifle to her apartment on 07/21/08. She also advised that Patrick Yevsukov is a intern [sic] with the Montgomery County Police. Yevsukov is a current student at St. John's College High School in Washington, D.C., and McKenzie-Gude just graduated from St. Johns College High School.
>
> She also advised that Colin McKenzie-Gude has been constantly discussing weapons and explosives with her nephew Patrick Yevsukov. Colin McKenzie-Gude also brought chemicals to the house with computer material safety data sheets detailing the chemicals. The chemicals were Acetone, Nitric Acid, Hydrochloric Acid, Sulfuric Acid, Methyl Ethyl Ketone, and Nitromethane. These chemicals are fuels and oxidizers that can be used to manufacture explosive devices.

The affidavit goes on to describe the faculty list, police letterhead, and gun safe instructions that Ms. Yevsukov had attached to her letter. Further, the affidavit explains that "the AK-47 style assault rifle is registered to a Joe Gude with the Maryland State Police," and that "Colin McKenzie-Gude is 18 years of age, and is prohibited from owning or possessing any

---

[1]The affidavit misspells McKenzie-Gude's first name; the proper spelling of his name is Collin.

firearms due to his age." Although the affiants averred that they "believe[d] that evidence of the above mentioned crimes [was] contained in the aforementioned premises," *i.e.*, the Rockhurst Road residence, they failed to state that McKenzie-Gude or Joseph Gude lived at that address.

A state court judge issued a warrant to search the Rockhurst Road residence that same day, and at approximately noon, members of the Montgomery County Police Department and the Montgomery County Fire Marshal's Office executed the search. The officers seized various items from McKenzie-Gude's bedroom, including several weapons, assorted gun parts, two bullet-proof vests, hundreds of rounds of ammunition, chemicals and other materials that could be used to make explosive devices, and instructions for making such devices. Detective Zacharek described the seized items on the search warrant inventory that he prepared and provided to McKenzie-Gude's mother.

In a separate search of Patrick Yevsukov's former residence, Montgomery County police officers also recovered "post-blast evidence" of five pipe bomb detonations. Among this debris, a "latent fingerprint of McKenzie-Gude's was recovered from the adhesive side of a piece of tape that was attached to some wires and a battery."

Four months later, in November 2008, a federal grand jury indicted McKenzie-Gude for knowing possession of a firearm, "specifically, a destructive device, which was not registered to him," in violation of 26 U.S.C. § 5861(d). McKenzie-Gude moved to suppress the evidence seized from the Rockhurst Road residence, claiming the search warrant affidavit was constitutionally defective because it failed to link him to the Rockhurst Road residence. McKenzie-Gude further contended that the officers had made material misrepresentations and omissions in the affidavit, entitling him to a hearing to determine its veracity.

At a motions hearing in July 2009, the district court received as exhibits the police incident report describing the police investigation of McKenzie-Gude and Ms. Yevsukov's July 27, 2008 letter. Upon consideration of this evidence, the court refused to suppress the seized evidence, finding that the officers executing the warrant, whom the district court characterized (without objection from the defendant) as the affiants, relied in good faith on the warrant because, "apart from the affidavit, it's clear where Mr. [McKenzie-]Gude lives. That is indicated in the report that's made to the police officer." The court also denied McKenzie-Gude's motion for a hearing, concluding that the affiants had not made material misrepresentations or omissions in the search warrant application. McKenzie-Gude then entered a conditional guilty plea, reserving his right to appeal these suppression rulings.

At McKenzie-Gude's sentencing hearing, his friend, Patrick Yevsukov, testified that he and McKenzie-Gude detonated pipe bombs together on approximately five occasions and talked daily about explosive devices and firearms. Patrick also testified about a plan that he and McKenzie-Gude had formulated, but never actually executed, to purchase firearms with obliterated serial numbers from a fellow high school student. During the planned purchase, they would carry McKenzie-Gude's weapons for protection in case "anything went wrong."

The district court also considered the testimony of an expert on explosive devices, FBI Agent Richard Stryker, who had examined the evidence seized from McKenzie-Gude's bedroom. Agent Stryker testified that McKenzie-Gude had possessed enough chemicals to construct at least ninety explosive devices and sixteen "initiators," which are necessary to ignite the devices. He also opined that based on his "training and experience," McKenzie-Gude "most likely" had possessed this amount and combination of chemicals in order "to make explosive materials."

The district court then calculated McKenzie-Gude's Sentencing Guidelines range. The court denied McKenzie-Gude's request for a two-level downward adjustment for acceptance of responsibility, finding that the record evidence belied his statement to the probation officer that he had "never assembled or detonated any explosive devices." Further, over McKenzie-Gude's objections, the court applied two four-level enhancements. With an offense level of 28, criminal history category I, the court calculated McKenzie-Gude's sentencing range as 78-97 months and imposed a below-Guidelines sentence of 61 months incarceration to be followed by three years of supervised release. McKenzie-Gude noted a timely appeal.

## II.

McKenzie-Gude initially contends that the district court erred in refusing to suppress the evidence obtained during the search of the Rockhurst Road residence. We review *de novo* the district court's legal determinations; we review the court's underlying factual findings for clear error. *United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011).

The Government has conceded that the search warrant application and affidavit in this case failed to provide the requisite nexus between McKenzie-Gude and the target residence. The Government asks, however, that we apply the *Leon* good faith exception to the exclusionary rule. *See United States v. Leon*, 468 U.S. 897, 925 (1984) (permitting a court to proceed "immediately to a consideration of the officers' good faith"); *see also United States v. Bynum*, 293 F.3d 192, 194-95 (4th Cir. 2002).

In *Leon*, the Supreme Court held that a court should not suppress the fruits of a search conducted pursuant to a "subsequently invalidated" warrant unless "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. Given that McKenzie-Gude argues that the warrant was

invalid solely because the affidavit failed to link him and his alleged criminal activity to the Rockhurst Road residence, *Leon* requires that we assess whether the officers "harbored an objectively reasonable belief in the existence" of this factual predicate. *Id.* at 926.

   *Leon* states that officers cannot be found to have acted with "objective reasonableness" and suppression remains the appropriate remedy when they rely on "an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923 (internal quotations omitted). The Government principally[2] contends that the officers acted with objective reasonableness by relying on the affidavit and "additional evidence" known to them. The Government maintains that this "additional evidence"—the police report and Ms. Yevsukov's July 27 letter stating McKenzie-Gude "lived at the Rockhurst Road property"—"show[ed] beyond dispute" that the officers "had good quality information linking the criminal activity, the defendant, and the target residence." Appellee's Br. at 33. McKenzie-Gude conceded at oral argument before us that had the officers included this additional evidence in their affidavit, the search would have been justified. He argues, however, that *Leon* does not permit

---

   [2]The Government briefly argues that the officers should be found to have reasonably relied on the affidavit alone. According to the Government, the judge assertedly could have *inferred* from the affidavit a nexus between McKenzie-Gude's residence and the evidence sought (explosive devices and firearms) given that individuals tend to keep such items at home. We reject this argument. Our precedent does allow a judge to make reasonable inferences that people store contraband in their homes. *See, e.g.*, *United States v. Grossman*, 400 F.3d 212, 217-18 (4th Cir. 2005). But we have never held that a judge can make such an inference absent *any* facts in the affidavit linking a person to a residence. *Cf. United States v. Williams*, 548 F.3d 311, 321 (4th Cir. 2008) (applying *Leon* good faith exception when affidavit included "bare assertions that the targeted dwellings were [the defendants'] current residences"). Here, of course, the Government concedes that "the officers inadvertently did not" include in the affidavit *any* facts linking McKenzie-Gude or Joseph Gude to the target residence. Appellee's Br. at 31.

a court to "look outside the four corners of the affidavit" in assessing an officer's objective good faith. Appellant's Br. at 21-22. Thus the question before us is whether, in determining an officer's good faith, a court may properly look beyond the facts stated in the affidavit and consider uncontroverted facts known to the officers but inadvertently not disclosed to the magistrate.

*Leon* instructs that the "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal" in light of "*all of the circumstances*." 468 U.S. at 922 n.23 (emphasis added); *accord Herring v. United States*, 555 U.S. 135, 145 (2009); *United States v. DeQuasie*, 373 F.3d 509, 520 (4th Cir. 2004). For this reason, we have consistently rejected the notion that reviewing courts may not look outside the four corners of a deficient affidavit when determining, in light of all the circumstances, whether an officer's reliance on the issuing warrant was objectively reasonable. *See, e.g.*, *United States v. Perez*, 393 F.3d 457, 462 (4th Cir. 2004); *United States v. Legg*, 18 F.3d 240, 243-44 (4th Cir. 1994); *United States v. Edwards*, 798 F.2d 686, 691-92 (4th Cir. 1986).

For example, in *Legg* we held it "proper to consider any contemporaneous oral statements to the magistrate in conjunction with the supporting affidavit in assessing the reasonableness of an officer's reliance on a warrant." 18 F.3d at 243. We expressly rejected the argument that *Leon* "categorically precludes application of the good faith exception" when the affidavit examined in isolation "lack[s] sufficient indicia of probable cause." *Id.* at 243 n.1. In doing so, we pointed out that *Leon* "merely noted that an officer's reliance on an affidavit that lacked indicia of probable cause could not be reasonable" but never considered whether an officer's reliance on some other information, in combination with the affidavit, could be reasonable. *Id.*

Thus, we believe that *Leon* presents no barrier to holding that the experienced officers in this case, who swore out the affidavit and executed the search, acted with the requisite objective reasonableness when relying on uncontroverted facts known to them but inadvertently not presented to the magistrate. A number of our sister circuits agree. *See United States v. Marion*, 238 F.3d 965, 969 (8th Cir. 2001) (holding uncontested information known to the executing officers "but not presented to the issuing judge" was "sufficient" to demonstrate their reliance on the warrant was "objectively reasonable"); *United States v. Dickerson*, 975 F.2d 1245, 1250 (7th Cir. 1992) (finding officers acted in good faith when they knew facts not presented to the magistrate that gave them probable cause to search); *United States v. Taxacher*, 902 F.2d 867, 871-73 (11th Cir. 1990) (relying on facts known by the officer but not presented to magistrate in determining "whether the officer acted in objective good faith under all the circumstances" (emphasis omitted)).[3]

Refusing to consider such information risks the anomalous result of suppressing evidence "obtained pursuant to a warrant supported by the affidavit of an officer, who, in fact, possesses probable cause, but inadvertently omits some information from his affidavit." *Bynum*, 293 F.3d at 199; *see also United States v. Owens*, 848 F.2d 462, 465-66 (4th Cir. 1988) (holding exclusionary rule inapplicable when officers made an "honest mistake" in reporting the wrong address in the affidavit and were thus "justified in using common sense and reliable information known to them outside the four corners of the warrant and affidavit").

---

[3]Two circuits, albeit over dissents, have held that *Leon* "good faith reliance" can be "measured only by what is in" an officer's "affidavit." *See United States v. Laughton*, 409 F.3d 744, 751-52 (6th Cir. 2005); *see also United States v. Hove*, 848 F.2d 137, 140 (9th Cir. 1988). But both cases differ markedly from that at hand. For in neither is there any indication that the officers relied on uncontroverted facts known to them, which the defendant conceded would have established probable cause if not inadvertently omitted from the affidavit.

Moreover, contrary to the suggestion of McKenzie-Gude, we do not believe that a court abandons the objective inquiry required by *Leon* when it considers the uncontroverted *facts known* to the officer, which he has inadvertently failed to disclose to the magistrate. Of course, *Leon* requires an assessment of an officer's objective reasonableness that cannot "turn on the subjective good faith of individual officers." *Leon*, 468 U.S. at 919 n.20. But this limitation simply precludes courts from "inquir[ing] into the subjective *beliefs* of law enforcement officers." *Id.* at 922 n.23 (emphasis added). It does not require courts to disregard specific, uncontroverted facts known to the officers. *See also Herring*, 555 U.S. at 145 (noting in dicta that the circumstances relevant to the good faith inquiry "frequently include a particular officer's knowledge and experience, but that does not make the test any more subjective than the one for probable cause, which looks to an officer's knowledge and experience").

Although *Leon* expressly eschewed "fruitless" inquiries "into the minds of police officers" to ascertain "motive," *Leon*, 468 U.S. at 922 n.23, nowhere does *Leon* find irrelevant actual uncontroverted facts known to—as opposed to subjective beliefs held by—an officer. Such facts are certainly relevant in the qualified immunity context, which requires courts to ascertain whether a "reasonable officer" could have believed a search was lawful "in light of clearly established law and the information the searching officers possessed." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Indeed, in that context, the Court has carefully differentiated between a "fact-specific" "examination of the information possessed by the searching officials" and an "inquiry into officials' subjective intent." *Id.*[4] This analogy has special force given that the

---

[4]At oral argument, McKenzie-Gude heavily relied on *Groh v. Ramirez*, 540 U.S. 551, 563 (2004), which affirmed the denial of summary judgment in a 42 U.S.C. § 1983 action to an officer who sought to rely on a search warrant in which he failed to particularize the items sought. The Court rejected the officer's argument that the warrant was not defective

Supreme Court has held that "the same standard of objective reasonableness that [courts] appl[y] in the context of a suppression hearing in *Leon* . . . defines the qualified immunity accorded an officer." *Malley v. Briggs*, 475 U.S. 335, 344 (1986).

The district court's assessment of the officers' good faith in this case necessitated no journey "into the minds of [the] police officers," *Leon*, 468 U.S. at 922 n.23, but rather involved simply reading the documents in the record containing the undisputed, relevant facts known to the officers prior to the search. As McKenzie-Gude conceded at oral argument, these facts considered in conjunction with the affidavit, certainly sufficed to establish objectively reasonable reliance on the warrant.

Given the finding of fact by the district court (unchallenged by McKenzie-Gude) that the affiant officers also executed the search, the officers would have had no reason to second guess the magistrate's imprimatur of their application to search. Because the officers merely failed to recognize their own inadvertent omission, this is not one of those "unusual cases in which exclusion will further the purposes of the exclusionary rule." *See Leon*, 468 U.S. at 918. For, as the Supreme Court recently explained, "when police mistakes are the result of negligence such as that described here, rather than systemic error or reckless disregard of constitutional requirements, any

---

because the supporting affidavit contained a particularized list. However, the Court took pains to limit its rationale to the significance of the particularity requirement, explicitly set forth in the Fourth Amendment, which assures that "the individual whose property is searched" knows the "limits" of the search. *Id.* at 561; *see also id.* at 554, 556-65 (invoking the importance of the "particularity requirement" no less than *seventeen* times). McKenzie-Gude cannot and does not make any argument that the warrant here fails to meet the particularity requirement; in fact, the warrant clearly identifies the target residence and sets forth in detail the items sought.

marginal deterrence does not 'pay its way.'" *Herring*, 555 U.S. at 147-48 (quoting *Leon*, 468 U.S. at 907 n.6).

### III.

McKenzie-Gude next contends that the district court erred in denying his request for a hearing to challenge the veracity of the search warrant pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Again, we review the district court's legal determinations *de novo* and its factual findings for clear error. *Allen*, 631 F.3d at 171.

In *Franks*, the Supreme Court held that "in certain circumstances, a challenge to a warrant's veracity must be permitted." 438 U.S. at 164. To obtain a *Franks* hearing, the accused must make a substantial preliminary showing that (1) officers knowingly or recklessly made false statements in or omitted facts from an affidavit supporting a search warrant, *and* (2) those false statements or omissions were material, *i.e.*, rendered the affidavit unable to "support a probable cause finding." *Allen*, 631 F.3d at 171 (citing *Franks*, 438 U.S. at 155-56); *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990). Warrant affidavits carry a "presumption of validity," and allegations of "negligence or innocent mistake" provide an "insufficient" basis for a hearing. *Franks*, 438 U.S. at 171.

McKenzie-Gude initially maintains that the affiant officers intentionally misrepresented that Ms. Yevsukov *personally* observed all of the events she reported to the police rather than learning some of them through hearsay. Even if the affiants intentionally made the asserted misrepresentation—which the district court found not to be the case—McKenzie-Gude has failed to demonstrate how that alleged misrepresentation was material to the probable cause determination.

Contrary to McKenzie-Gude's suggestion, an affidavit based on hearsay can establish probable cause depending on "all the circumstances set forth in the affidavit, including the

veracity and basis of knowledge of persons supplying hearsay information" and the "degree to which an informant's story is corroborated." *United States v. Hodge*, 354 F.3d 305, 309 (4th Cir. 2004) (internal quotations and alterations omitted). Here, Ms. Yevsukov learned from her nephew, Patrick, that McKenzie-Gude brought a weapon to her home. Neither Patrick nor Ms. Yevsukov was an unknown, unidentified tipster; rather, the police knew both of them, and Patrick even served as a police intern. Further, Ms. Yevsukov personally observed "suspicious chemicals" in her home, which she herself removed. Moreover, the police officers independently corroborated that McKenzie-Gude's father, Joseph Gude, purchased an AK-47 assault rifle. McKenzie-Gude simply has offered no reason why the magistrate should not have credited the affiants' accurate account of the facts, and thus no reason for a *Franks* hearing on the basis of misrepresentations in the affidavit.

McKenzie-Gude has also failed to demonstrate a basis for a *Franks* hearing based on omissions in the affidavit. He contends that the affiant officers intentionally omitted from the affidavit Patrick Yevsukov's assertion that McKenzie-Gude never brought a weapon to his home. But again, McKenzie-Gude has failed to demonstrate that the asserted defect is material to the probable cause determination. Although Patrick's statement contradicted that of Ms. Yevsukov, Patrick made his statement while being questioned about his own involvement in the alleged crimes. Such a self-serving statement, made by the defendant's friend does not warrant a *Franks* hearing, particularly when a credible complaining witness directly contradicts it. *See Colkley*, 899 F.2d at 301 ("Omitted information that is potentially relevant but not dispositive [of the probable cause determination] is not enough to warrant a *Franks* hearing.").

IV.

McKenzie-Gude raises three challenges to his sentence. All rest on the contention that the district court improperly

applied the United States Sentencing Guidelines. "In determining whether a district court properly applied the advisory Guidelines, including application of any sentencing enhancements, we review the district court's legal conclusions *de novo* and its factual findings for clear error." *United States v. Layton*, 564 F.3d 330, 334 (4th Cir. 2009). We accord the district court's credibility determinations "great deference." *Id.* (internal quotation omitted).

First, McKenzie-Gude contends that the district court erred in denying him a downward adjustment for acceptance of responsibility. The Guidelines provide for a two-level decrease when "the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). However, "merely pleading guilty" does not entitle one to a downward adjustment. *United States v. Nale*, 101 F.3d 1000, 1005 (4th Cir. 1996); *see also*, U.S.S.G. § 3E1.1, cmt. n.3 ("A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right."). Rather, to be eligible for this downward departure, "the defendant must prove by a preponderance of the evidence that he has clearly recognized and affirmatively accepted personal responsibility for his criminal conduct." *Nale*, 101 F.3d at 1005. The Guidelines provide that "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." U.S.S.G. § 3E1.1 cmt. n.1(A).

The district court found that although McKenzie-Gude pled guilty, his statements to the probation officer that he "never assembled or detonated any explosive devices" were "totally incredible." Accordingly, the court concluded that McKenzie-Gude "has not accepted the fact that he assembled or detonated these explosive devices." Given the evidence presented at the sentencing hearing—Patrick Yevsukov's testimony that he and McKenzie-Gude regularly detonated such devices and an expert's identification of McKenzie-Gude's fingerprint on the debris of a detonated device—McKenzie-Gude has failed

to show that the district court clearly erred in denying the downward adjustment for acceptance of responsibility. *See Nale*, 101 F.3d at 1005 (noting district court's determination regarding a defendant's acceptance of responsibility is a factual finding reviewed for clear error).

Next, McKenzie-Gude challenges the district court's finding that he was eligible for a four-level enhancement because the offense involved eight to twenty-four destructive devices. *See* U.S.S.G. § 2K2.1(b)(1)(B). To be eligible for the enhancement, "[a] defendant must possess every essential part necessary to construct a destructive device." *United States v. Blackburn*, 940 F.2d 107, 110 (4th Cir. 1991) (emphasis omitted).

Again, McKenzie-Gude has not met his burden of demonstrating that the district court clearly erred in applying the Guidelines. FBI Agent Stryker testified that McKenzie-Gude possessed enough chemicals and materials to construct sixteen destructive devices. Further, Agent Stryker testified that based on the amount, combination, location, and close proximity of the chemicals, McKenzie-Gude possessed them "most likely . . . to make explosive materials."

Finally, McKenzie-Gude argues that the district court clearly erred by applying a four-level enhancement for possessing a firearm "in connection with another felony offense." *See* U.S.S.G. § 2K2.1(b)(6)(B). A defendant possesses a firearm "in connection with" another felony when the "firearm facilitated, or had the potential of facilitating the other offense." *United States v. Alvarado Perez*, 609 F.3d 609, 612 (4th Cir. 2010) (internal quotations omitted). "This requirement is satisfied if the firearm had some purpose or effect with respect to the other offense, including if the firearm was present for protection or to embolden the actor." *Id.* at 612-13 (internal quotations and alterations omitted).

At sentencing, the district court heard testimony that McKenzie-Gude initiated a conspiracy with Patrick Yevsukov

to purchase firearms with obliterated serial numbers. Patrick testified that they recruited others to participate in their plan and determined the location where they would purchase the weapons. He further testified that the plan called for him and others to be armed with McKenzie-Gude's weapons to fire at the seller, who the conspirators would maneuver to stand in a designated "kill zone," if the deal went bad.

Given this testimony, the district court's finding that the plan constituted "at a minimum" a conspiracy to possess guns with obliterated serial numbers surely is not clearly erroneous. Accordingly, the district court did not err in applying the enhancement. *See* 18 U.S.C. § 922(k) (making it a felony offense to "possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered"); *id.* § 371 (criminalizing conspiracies "to commit any offense against the United States").

V.

For the foregoing reasons, we reject McKenzie-Gude's challenges to his conviction and sentence. The judgment of the district court is

*AFFIRMED*.