**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-4523**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LAMARCUS THOMAS,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg. Michael F. Urbanski, Chief District Judge. (5:16-cr-00001-MFU-JCH-1)

Argued: September 28, 2018                    Decided: November 8, 2018

Before WILKINSON and HARRIS, Circuit Judges, and William L. OSTEEN, Jr., United States District Judge for the Middle District of North Carolina, sitting by designation.

Affirmed by published opinion. Judge Harris wrote the opinion, in which Judge Wilkinson and Judge Osteen joined.

**ARGUED:** Andrea Lantz Harris, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlottesville, Virginia, for Appellant. Nancy Spodick Healey, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee. **ON BRIEF:** Larry W. Shelton, Federal Public Defender, Christine Madeleine Lee, Assistant Federal Defender for Appellate Litigation, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Roanoke, Virginia, for Appellant. Leslie Williams Fisher, Child Exploitation & Obscenity Section, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Rick A.

Mountcastle, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

---

PAMELA HARRIS, Circuit Judge:

Detective Charles Coleman arrested LaMarcus Thomas on charges of aggravated sexual battery, and seized a cell phone from Thomas during a search incident to the arrest. After Coleman obtained a warrant to search the phone, authorities discovered sexually explicit images and videos involving children.

Charged with producing child pornography, Thomas moved to suppress that evidence, arguing that the affidavit submitted with Coleman's warrant application was insufficient to establish probable cause for the search. The district court agreed that the affidavit was deficient, but nevertheless denied Thomas's motion to suppress under the good faith exception to the exclusionary rule articulated in *United States v. Leon*, 468 U.S. 897 (1984). While the affidavit alone did not establish probable cause, the district court reasoned, additional information known to Coleman was enough to give rise to an objectively reasonable belief that there was probable cause for the search.

We agree with the district court that the evidence obtained from Thomas's phone is admissible under *Leon*. Our precedents make clear that in assessing an officer's objective good faith in executing a search warrant, we may consider facts known to the officer, but inadvertently omitted from a warrant affidavit. And under all the circumstances presented here, Coleman had a reasonable basis to believe there existed probable cause to search Thomas's phone. Accordingly, we affirm the judgment of the district court.

**I.**

3

**A.**

In 2014, the police department in Winchester, Virginia received an anonymous tip that LaMarcus Thomas had sexually abused a minor. Detective Charles Coleman was assigned to investigate the allegations.

Coleman began his investigation by contacting the alleged victim's mother. During her conversation with Coleman, the mother accused Thomas – who knew her family through church and often acted as a caretaker for her children – of sexually assaulting two of her minor sons. The mother also claimed that since the alleged assault, Thomas had reached out to her several times over the phone, hoping to schedule further visits with her children.

Coleman arranged for the two boys to be interviewed, and observed the interviews from a separate room. Both boys stated that Thomas had put his hand inside their pajamas and fondled their genitals during a sleepover at a hotel. One of the boys also described Thomas's attempts to contact his mother through phone calls and text messages after the assault, in an effort to arrange further sleepovers.

Using a telephone number provided by the boys' mother, Coleman contacted Thomas and asked him to appear for an interview at the Winchester police station. Thomas agreed, and during his video-recorded interview with Coleman, he admitted to touching the boys' genitals.

Coleman filed a criminal complaint against Thomas, describing his investigation of the alleged assaults and requesting two warrants for Thomas's arrest. The complaint included the ages of the victims and identified October 11, 2014, as the estimated date of

the assaults. Coleman arrived at that date by reviewing records from the hotel the boys identified as the site of their abuse, which indicated that Thomas had stayed there on September 16, 2014, and again on October 11, accompanied by two children.

On January 5, 2015, a magistrate issued two warrants for Thomas's arrest on charges of aggravated sexual battery of a minor. Coleman arrested Thomas on the same day, and during a search incident to the arrest, seized a cell phone from Thomas's pocket.

After consulting with state prosecutors, Coleman requested a warrant to search the phone and submitted an accompanying affidavit. The affidavit explained that Coleman had obtained two arrest warrants for Thomas on charges of aggravated sexual battery, based on an investigation in which Thomas had corroborated the allegations against him. It noted the date – January 5, 2015 – on which the warrants had issued and Coleman had made the arrest, but it did not include the date on which the offenses were alleged to have occurred. With respect to the phone, specifically, Coleman averred that based on his training and experience, it is common for offenders like Thomas to keep "contact items" from victims – pictures, text messages, voicemails, and the like – on their cell phones. J.A. 208. The affidavit did not reference Thomas's use of a phone to contact the boys' mother after the assaults.

A magistrate issued a search warrant for the phone on the same day, January 13, 2015. After conducting a forensic analysis of the phone, state authorities discovered explicit images and videos of Thomas with two minors. Thomas eventually confessed to sexually abusing the minors and memorializing the abuse on his cell phone.

**B.**

5

On January 13, 2016, a federal grand jury in the Western District of Virginia charged Thomas with six counts of producing child pornography, in violation of 18 U.S.C. §§ 2251(a), (e) (2012). Thomas moved to suppress the evidence derived from the search of his cell phone, arguing that for two reasons, Coleman's affidavit fell short of establishing probable cause for the search. First, according to Thomas, the affidavit did not sufficiently link the phone to the alleged offenses, and thus did not establish probable cause that evidence would be found in the place to be searched. And second, Thomas argued, there was a problem with timing and staleness: Even if there were some reason to think evidence would have been found on his phone at around the time of the alleged offenses, the affidavit gave no indication of when those offenses occurred, making it impossible for a magistrate to assess the likelihood that evidence would *remain* on the phone at the time of the search.

Following a hearing at which Coleman testified, the district court denied Thomas's motion to suppress. The court agreed with Thomas that the search warrant was unsupported by probable cause, finding that "while the affidavit contains sufficient facts supporting the aggravated sexual battery charge, it contains no facts linking that crime to" the subsequent search of Thomas's cell phone. J.A. 251. Nevertheless, the court held that the evidence found on Thomas's phone was admissible under *United States v. Leon*, 468 U.S. 897 (1984), because Coleman had an "objectively reasonable belief" that there was probable cause to execute the search. J.A. 244. Relying on *United States v. McKenzie-Gude*, 671 F.3d 452, 459, 460 (4th Cir. 2011), the court reasoned that any gaps in Coleman's affidavit could be filled by looking "outside the four corners" of the affidavit, J.A. 260, and considering "uncontroverted facts known to [Coleman] but inadvertently not

6

presented to the magistrate," J.A. 244. Here, the court continued, Coleman was aware that Thomas had phoned the victims' mother to set up a new encounter with her sons, "suppl[ying] the missing link between the [] cell phone and the crime of aggravated sexual battery." J.A. 260–61. Similarly, any staleness concern was addressed by Coleman's knowledge that the assaults occurred – and the phone calls in question were made – around October of 2014, just a few months before the search was authorized in January of 2015.

Thomas pled guilty to two counts of producing child pornography, reserving his right to appeal the district court's denial of his motion to suppress. The district court sentenced Thomas to 360 months of imprisonment, followed by a lifetime of supervised release, and Thomas timely appealed.

## II.

Thomas's sole challenge on appeal is to the district court's denial of his motion to suppress. In considering the district court's suppression decision, we review legal determinations de novo and the court's underlying factual findings for clear error. *United States v. Guijon-Ortiz*, 660 F.3d 757, 762 (4th Cir. 2011). For the reasons that follow, we agree with the district court that the evidence discovered on Thomas's phone was admissible under *Leon*'s good faith exception to the exclusionary rule.[1]

---

[1] In light of this holding, we need not consider whether the affidavit was deficient in establishing probable cause. We intend to cast no doubt on the district court's decision in this regard. Rather, by proceeding directly to the question of admissibility under *Leon*, (Continued)

The exclusionary rule ordinarily provides that "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Kimble*, 855 F.3d 604, 610 (4th Cir. 2017) (quoting *United States v. Calandra*, 414 U.S. 338, 347 (1974)). In *Leon*, however, the Supreme Court recognized a good faith exception to that rule, under which evidence obtained by an officer who acts in objectively reasonable reliance on a search warrant will not be suppressed, even if the warrant is later deemed invalid. 468 U.S. at 922. Typically, an officer's reliance on a magistrate's decision to issue a warrant will be deemed objectively reasonable. *Id.* But as *Leon* makes clear, when a supporting affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," then an officer cannot be found to have reasonably relied on the resulting warrant, and suppression remains the appropriate remedy. *Id.* at 923 (internal quotation marks omitted).

Thomas argues that this case falls squarely within that limit on *Leon*. According to Thomas, the affidavit submitted by Coleman in support of his search warrant application was so "lacking in indicia of probable cause" that Coleman could not reasonably have relied on the warrant in searching Thomas's phone. The government's primary response is that even if Coleman's affidavit was obviously deficient in establishing probable cause – a point the government does not concede – Coleman reasonably believed in the existence of probable cause based on his own knowledge of the investigation. And that is enough,

_____

we simply adopt the same analytical approach we have taken in similar cases in the past. *See, e.g.*, *United States v. Bynum*, 293 F.3d 192, 194–95 (4th Cir. 2002); *cf. Leon*, 468 U.S. at 925 (stating that a reviewing court may proceed directly to the good faith inquiry without first deciding whether a warrant was supported by probable cause).

8

the government argues, to establish that Coleman executed the search warrant with the objective good faith required by *Leon*.

Like the district court, we agree with the government. The central question in this case is whether, as the government urges, we can look beyond the four corners of the affidavit in applying *Leon*, and consider as well facts known to Coleman but omitted from the affidavit presented to the magistrate. And as the district court recognized, we already have answered precisely that question in the affirmative, holding in *McKenzie-Gude* that "*Leon* presents no barrier" to considering "uncontroverted facts" known to an officer but "inadvertently not presented to the magistrate" in assessing the officer's objective good faith. 671 F.3d at 460.

In *McKenzie-Gude*, officers executed a residential search warrant that led to the seizure of weapons from a defendant's bedroom. *Id.* at 457. The affidavit supporting the warrant application included most, but not all, of the facts necessary to show probable cause that evidence would be found in the place to be searched: It established that the defendant likely possessed illegal weapons and that he likely possessed them in his home, and it included the address to be searched – but it failed to state that the defendant lived at, or had any connection to, the listed address. *See id.* at 457–58. Despite that obvious deficiency, we applied the good faith exception under *Leon*. *Id.* at 461. While the affidavit itself lacked any nexus between the place to be searched and the defendant, we reasoned, that gap could be filled by an uncontroverted fact known to the searching officers – specifically, that the defendant lived at the address identified in the affidavit. *Id.* at 458–60.

9

As we explained in *McKenzie-Gude*, that result is entirely consistent with *Leon*'s "objective inquiry" into officer good faith. *Id.* at 460. The key, "objectively ascertainable question" under *Leon* is "'whether a reasonably well trained officer would have known that the search was illegal' in light of '*all of the circumstances*.'" *Id.* at 459 (quoting *Leon*, 468 U.S. at 922 n.23). Among those circumstances are "specific, uncontroverted facts known to the officer[]," *id.* at 460, which necessarily inform the objective reasonableness of an officer's determination regarding probable cause, even if they are omitted inadvertently from a warrant application. And when an officer's belief in the existence of probable cause is objectively reasonable, he or she has no reason to second guess the magistrate's decision to issue a warrant, and acts in good faith when executing the search. *Id.* at 459, 461; *see also Leon*, 468 U.S. at 920–21.

Moreover, we reasoned, any other outcome would produce "anomalous result[s]." *McKenzie-Gude*, 671 F.3d at 460. Evidence might be suppressed even when "obtained pursuant to a warrant supported by the affidavit of an officer, who, in fact, possesses probable cause." *Id.* (quoting *Bynum*, 293 F.3d at 199). And that cost to the criminal justice system would come without offsetting benefits: When a warrant is invalidated only because an officer mistakenly omitted information necessary to establish probable cause, application of the exclusionary rule can have little, if any, deterrent effect. "[W]hen police mistakes are the result of negligence . . . rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence [through application of the exclusionary rule] does not pay its way." *Id.* at 461 (quoting *Herring v. United States*, 555 U.S. 135, 147–48 (2009)).

10

The district court correctly applied *McKenzie-Gude* to the present case, considered both the affidavit and the facts known to Detective Coleman, and concluded that Coleman reasonably relied on the warrant to search Thomas's phone. Although the affidavit did not contain particularized facts establishing a nexus between the place to be searched – Thomas's phone – and the alleged sexual abuse, the court reasoned, Coleman knew that both the victims' mother and one of the victims had reported that Thomas used a phone in furtherance of his criminal conduct, calling the mother to attempt to arrange further interactions with her sons. And Coleman "reasonably could infer," the court continued, that the cell phone seized during Thomas's arrest was the same phone Thomas had used to contact the boys' mother. J.A. 244. Similarly, though Coleman's affidavit lacked any information about when the offenses and phone calls occurred, Coleman knew that Thomas had visited a hotel with his victims and tried to contact their mother less than five months prior to the search, resolving any staleness issues that otherwise might arise.

Thomas's principal argument in response to this straightforward analysis is that Coleman's omissions were not "inadvertent" within the meaning of *McKenzie-Gude*, in that there is no evidence that Coleman believed (albeit incorrectly) that he had included the relevant facts in his affidavit.[2] Instead, Thomas argues, Coleman intentionally omitted

---

[2] Thomas also argues briefly that unlike the fact omitted from the affidavit in *McKenzie-Gude* – the defendant's address – the information known to Coleman and considered by the district court was not "uncontroverted." But as Thomas concedes, it is indeed uncontroverted that at the time Coleman sought a search warrant and then executed the search, he knew "Thomas had called the victims' mother by phone and left her voicemail or text messages." Appellant's Br. at 23. Similarly, Thomas does not contest that Coleman knew, within a reasonably narrow window, the dates on which the abuse and (Continued)

crucial facts from his affidavit pursuant to a police department policy, which Coleman described at the suppression hearing as one of limiting newspaper publicity by "put[ting] no more [probable cause] into the warrant [affidavit] than it takes to obtain the warrant." J.A. 74. And because the court's decision in *McKenzie-Gude* was conditioned on inadvertence, Thomas concludes, we should not go beyond the four corners of the affidavit here.

We disagree. Coleman's error in this case – assuming there was one – was inadvertent in precisely the same sense as the error in *McKenzie-Gude*: In neither case did the error result from the kind of deliberate or bad faith effort to mislead a magistrate that would render *Leon*'s good faith exception inapplicable. *Cf. Leon*, 468 U.S. at 914 & n.12, 923 ("knowing or reckless falsity" in a search warrant affidavit may preclude reliance on *Leon*). The police department's purported policy was not to file deficient affidavits; it was to file affidavits that included enough, but no more than necessary, to establish probable cause.

To the extent Coleman's affidavit fell short, Coleman was not acting pursuant to that policy, and there is no other reason to think he was acting deliberately.[3] Rather, any

---

subsequent calls occurred. This uncontroverted information, along with the information included in Coleman's affidavit, is enough to show an objectively reasonable belief in the existence of probable cause to search the phone seized when Thomas was arrested.

[3] Indeed, it would be the rare circumstance in which an officer would have any incentive to deliberately withhold from a search warrant affidavit information known to him that he believes necessary to establish probable cause. Should an officer do so, the most likely outcome would be the denial of a search warrant, leaving the officer empty-handed; the best-case scenario would be the granting of a search warrant that could not (Continued)

12

error appears to have resulted from a simple miscalculation by Coleman as to how much of what he knew he needed to include in his affidavit to show probable cause. That is not the kind of deliberate misconduct that the exclusionary rule was intended to deter. *See Herring*, 555 U.S. at 144 ("To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.").

In short, the district court properly considered facts known to Detective Coleman, but inadvertently omitted from his supporting affidavit, when it applied *Leon* in this case. Because Coleman "harbored an objectively reasonable belief in the existence of probable cause," *Leon*, 468 U.S. at 926, under that standard, the district court correctly denied Thomas's motion to suppress under *Leon*.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*

---

withstand the almost inevitable Fourth Amendment challenge. This is not a case, in other words, in which we need be concerned that police officers will have some systemic incentive to avoid the "detached scrutiny of a neutral magistrate." *Leon*, 468 U.S. at 913–14.

13