**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 17-4787

UNITED STATES OF AMERICA,

        Plaintiff – Appellant,

   v.

TYRONE IGNACIOU LYLES, a/k/a Tryone Ignacious Lyles, a/k/a Tyrone Ignatious Lyles,

        Defendant – Appellee.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Theodore D. Chuang, District Judge. (8:17-cr-00039-TDC-1)

Argued: November 1, 2018                       Decided: December 14, 2018

Before WILKINSON, WYNN, and DIAZ, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Wynn and Judge Diaz joined.

**ARGUED:** Jason Daniel Medinger, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellant. Cullen Oakes Macbeth, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellee. **ON BRIEF:** Stephen M. Schenning, Acting United States Attorney, Ray D. McKenzie, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellant. James Wyda, Federal Public Defender, Baltimore, Maryland,

Meghan Skelton, Appellate Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellee.

————————

WILKINSON, Circuit Judge:

A grand jury indicted defendant-appellee Tyrone Lyles for possessing firearms as a convicted felon, in violation of 18 U.S.C. § 922(g). The firearms were found in his home, which police searched after obtaining a warrant based on finding three marijuana stems in a trash pull. Lyles filed a motion to suppress the evidence found in his home—including the firearms, ammunition, and marijuana—arguing that the trash pull did not provide probable cause for the search. The district court granted defendant's motion, and the government now appeals. For the reasons that follow, we affirm the district court.

I.

Prince George's County Police, during an investigation unrelated to the present case, saw Lyles's phone number in a homicide victim's cell phone. They suspected that defendant might be relevant to that investigation. But it was only a hunch. So the police searched four trash bags found at a curb near Lyles's home and applied for a warrant to search Lyles's home based on what they found. The application's factual basis is quoted below:

> During the month of January, 2015, members of the Prince George's County Police Department became involved in an investigation of the residence located at 9010 Ridgewood Dr., Ft. Washington, Prince George's County Maryland 20744. Investigators had become aware of possible connections between the residence, its occupants and unlawful activities.
> Pursuant to this investigation, on January 5th, 2014 [sic] Your Affiant along with Sergeant Logan #2528 observed four large green plastic bags were abandoned on the curb side of 9010 Ridgewood Dr., Ft. Washington, Prince George's County Maryland 20744. Your Affiant along with Sergeant Logan #2528 removed the four green plastic bags from the curb and upon inspection your Affiant found three unknown type plant stems, three empty packs of rolling papers and one document addressed to 9010 Ridgewood Dr., Ft. Washington, Prince George's County Maryland

3

20744. The stems were taken to the Prince George's County Drug Lab where they tested positive for marijuana by a forensic chemist.

That upon the above described information and your Affiant's knowledge, training and experience, your Affiant believes that there are controlled dangerous substances, Marijuana, and handguns being stored, used and/or sold at 9010 Ridgewood Dr., Ft. Washington, Prince George's County Maryland 20744.

J.A. 24-25 (emphasis omitted). The affidavit included only these limited facts and general averments that marijuana is often stored in secure locations and disposed of nearby. It sought to search the home for evidence of possession of controlled substances, possession with intent to distribute controlled substances, and money laundering. See Md. Code Ann., Crim. Law §§ 5-601, 5-602, and 5-623 (West 2018). The application provided the magistrate with no facts about the earlier, unrelated investigation involving the recovered phone. It did not identify a homeowner or name the defendant.

The magistrate judge, however, granted a warrant to search defendant's home *in toto*. The warrant provided broad permissions to search the home and "any and all persons suspected to be involved in said illegal activities." J.A. 28. It authorized the police to seize essentially anything in the home, including cell phones, jewelry, records, diaries, and firearms. The police subsequently found four handguns, ammunition, marijuana, and drug paraphernalia in defendant's house.

A federal grand jury indicted Lyles under 18 U.S.C. § 922(g) for possession of firearms as a convicted felon. Defendant asked the district court to suppress the evidence recovered from his home, arguing that the search warrant was issued without probable cause. The district court held two hearings and requested supplemental briefing on that issue. It ultimately suppressed the evidence, finding "that the presence of only three

4

marijuana stems and rolling paper . . . does not establish a fair probability that additional marijuana will be found within the home." *United States v. Lyles*, Crim. No. TDC-17-0039, 2017 WL 5633093, at \*4 (D. Md. Dec. 20, 2017). The court did not apply the good faith exception because the warrant was not supported by probable cause and was plainly overbroad. *Id.* at \*5-7. The government now appeals.

## II.

The Fourth Amendment shields the people from unreasonable searches and seizures. A home search, as here, ordinarily requires a warrant. *Fernandez v. California*, 571 U.S. 292, 298 (2014). "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause determinations require a "practical, common-sense decision," based on sworn facts, whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). As always, "the ultimate touchstone of the Fourth Amendment is reasonableness." *Fernandez*, 571 U.S. at 298 (internal quotation marks omitted).

Since a state magistrate judge issued the challenged warrant, we ask whether the magistrate judge had a "substantial basis" for finding probable cause. *Gates*, 462 U.S. at 238-39. When evaluating whether the magistrate had a substantial basis to find probable cause, we "may not go beyond the information actually presented to the magistrate during the warrant application process." *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 277 (4th Cir. 2004). Because "we confine our review to the facts that were before the magistrate

5

judge," our "review of the magistrate judge's probable cause determination is identical to that of the district court." *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993).

## III.

The search warrant application here alleged drug possession, drug trafficking, and money laundering offenses as justifications for the search. The government, however, does not argue that the affidavit supplied probable cause to search for evidence of drug trafficking or money laundering.

The government instead contends that the trash pull evidence provided probable cause to search the home for marijuana possession. If so, the officers were lawfully inside Lyles's home, and the essential firearm and ammunition evidence might be saved under the plain view doctrine. See, *e.g.*, *United States v. Green*, 599 F.3d 360, 376 (4th Cir. 2010). We hold, however, that the trash pull evidence did not adequately support the warrant to search defendant's home for marijuana possession.

## A.

We have no doubt that trash pulls are a valid and important investigatory tactic. The Supreme Court held in *California v. Greenwood* that law enforcement may search trash left at the curb without a search warrant. 486 U.S. 35, 39-43 (1988). The Court found that people had no reasonable expectation of privacy in curbside trash. *Id.* at 40. Without such an expectation, individuals had no Fourth Amendment right to contest trash searches. *Id.* This circuit has accordingly recognized that evidence from trash pulls can be used to support a search warrant. See, *e.g.*, *United States v. Montieth*, 662 F.3d 660, 664-65 (4th Cir. 2011); *United States v. Gary*, 528 F.3d 324, 328-29 (4th Cir. 2008).

6

We also recognize, however, that homeowners do not sever all connections to their trash. The trash from a home often will contain a variety of private items and effects. The fact that someone wishes to dispose of something does not mean he intends all others to have access to it. One need only imagine the discomfort of watching a neighbor or stranger sift through trash bags recently left at the curb. Indeed, the relevance of items discovered in a trash pull is predicated on a connection between trash and the home. But the rationale for allowing warrantless trash searches is, ironically, predicated on the lack of a connection between trash and the privacy expectations in the home.

Precisely because curbside trash is so readily accessible, trash pulls can be subject to abuse. Trash cans provide an easy way for anyone so moved to plant evidence. Guests leave their own residue which often ends up in the trash. None of this means that items pulled from trash lack evidentiary value. It is only to suggest that the open and sundry nature of trash requires that it be viewed with at least modest circumspection. Moreover, it is anything but clear that a scintilla of marijuana residue or hint of marijuana use in a trash can should support a sweeping search of a residence. The Supreme Court recognized similar dangers in searches incident to traffic stops, where allowing comprehensive searches following minor infractions would create "a serious and recurring threat to the privacy of countless individuals." *Arizona v. Gant*, 556 U.S. 332, 345 (2009). That threat, like the threat posed by indiscriminate trash pulls, "implicates the central concern underlying the Fourth Amendment—the concern about giving police officers unbridled discretion to rummage at will among a person's private effects." *Id.*

B.

The question, as so often in Fourth Amendment cases, is what precisely the facts show. Among four trash bags, the officers discovered three empty packs of rolling papers, a piece of mail addressed to the home, and three marijuana stems. That is all. It is unsurprising, then, that the government contended at oral argument that its reasoning would apply anytime a trash pull revealed a single marijuana stem, and nothing more. But the evidence in this case falls well short of the evidence in previous cases that upheld home search warrants based, in part, on trash pulls.

In *Gary*, we approved a search warrant issued after the police received an anonymous tip that a named individual was selling drugs from a home. 528 F.3d at 328-29. To corroborate the tip, the police pulled tied trash bags from two cans directly behind the residence. *Id.* at 326. One can was marked with the street number. *Id.* The trash pull revealed not only plastic bags with heroin residue, but also foil and baggies with cut corners which indicated packaging and distribution of narcotics. *Id.* The trash pull in the instant case was not preceded by a tip, and the evidence pulled from the trash was far slimmer than that uncovered in *Gary*.[*]

In *Montieth*, we approved a search warrant issued after an ATF agent informed police that the defendant possessed "a sizeable amount of marijuana." 662 F.3d at 664. The officers confirmed Montieth's address, and found a trash can containing two bills

_____

[*] The government alludes vaguely to a tip from another officer in this case. The details and relevance of the tip are hazy and unclear at best. And in any event, no information about the alleged tip was furnished to the magistrate.

addressed to defendant and "extensive evidence of marijuana trafficking, including: (1) green saran wrap with suspected marijuana residue; (2) separate pieces of PVC pipe wrap (often used to package marijuana) with suspected marijuana residue; (3) pieces of green wrapper with brown tape with suspected marijuana residue; (4) several burnt marijuana cigarettes; (5) clear plastic baggies; and (6) marijuana stems." *Id.* The application also detailed Montieth's prior drug offenses. *Id.* The affidavit in the present case, unlike that in *Montieth*, did not detail a specific allegation relating to the home, recount past drug convictions, or put forward "extensive evidence of marijuana trafficking," *id.*

The evidence here is simply much weaker than in *Gary* or *Montieth*. We thus ask whether a trash pull revealing evidence of three marijuana stems, three empty packs of rolling papers, and a piece of mail, standing alone, may justify a sweeping warrant to search a home. We observe at the outset that "when it comes to the Fourth Amendment, the home is first among equals." *Florida v. Jardines*, 569 U.S. 1, 6 (2013). And "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed . . . ." *United States v. U.S. Dist. Court (Keith)*, 407 U.S. 297, 313 (1972). The home's status flows from the common law, as the "domicile was a sacrosanct interest in late eighteenth-century common law, as evidenced by the doctrine that a man's house is his castle." Thomas Y. Davies, *Recovering the Original Fourth Amendment*, 98 Mich. L. Rev. 547, 642 & n.259 (1999) (internal quotation marks omitted).

Castles, of course, are not impregnable, but neither are they lightly breached, thus giving rise to the Fourth Amendment requirement of a warrant supported by probable cause. The government invites the court to infer from the trash pull evidence that

9

additional drugs probably would have been found in Lyles's home. Well perhaps, but not probably. The government's argument has several shortcomings. This was a single trash pull, and thus one less likely to reveal evidence of recurrent or ongoing activity. And from that one trash pull, as defendant argues, "[t]he tiny quantity of discarded residue gives no indication of how long ago marijuana may have been consumed in the home." Appellee Br. at 21. This case is almost singular in the sparseness of evidence pulled in one instance from the trash itself and the absence of other evidence to corroborate even that. The affidavit thus did not provide a substantial basis for the magistrate to find probable cause to search the home for evidence of marijuana possession.

C.

The warrant at issue here also provided search and seizure authority wholly disconnected from marijuana possession. The warrant listed the following as items, evidence, and contraband to be seized:

1) Marijuana and any and all controlled dangerous substances, in whatever form, condition or however packaged, and to seize such paraphernalia that is used in the administration, preparation, and distribution or in conjunction with said illegal activities.
2) Any books, records, and documents relating to the acquisition, possession or distribution of said controlled dangerous substances.
3) Any and all safes, locked boxes and receptacles that could contain any other items described in this warrant and to seize all contents which pertain to the said illegal activities.
4) Any and all indicia of occupancy, residency, rental, and/or ownership of the premises described herein including, but not limited to, utility and telephone bills, canceled envelopes, rental, purchase or lease agreements, keys, photographs, clothing and personal toiletries.
5) To search any and all persons suspected to be involved in said illegal activities.
6) To view all non-commercially produced video recordings, digital video discs, and any other analog or digital media.

7)  Any electronic equipment, such as computers, external hard drives, facsimile machines, digital pagers, cellular telephones, answering machines, surveillance equipment, and related manuals used to generate, record, and/or store the information described in this exhibit, and the contents therein. Additionally, computer software, tapes and discs, audio and video tapes and/or discs, and the contents therein, containing the information generated by the aforementioned electronic equipment and used in the aforementioned violations relating to the transportation, distribution, ordering and purchasing of controlled dangerous substances. Due to files that are password and/or encryption protected and due to the extensive time involved in data recovery, this search and seizure warrant authorizes the removal and examination of such electronic devices in a laboratory setting by trained personnel.

8)  Any and all appointment books, diaries, calendars, financial records, work schedules, computer records, or other documents that detail the aforementioned violations or individuals involved in the aforementioned violations.

9)  Any and all financial documents that are related to the placement of monies used in the aforementioned violations.

10) Any and all photographs, including still photos, negatives, video recordings, films, undeveloped film, external memory sticks, cards and discs and the content therein, slides, in particular photographs of co-conspirators, of assets and/or controlled dangerous substances.

11) Currency, precious metals, jewelry, and financial instruments, including stocks and bonds.

12) Firearms, including but not limited to: handguns, pistols, revolvers, rifles, shotguns, machine guns, and any and all other weapons, as well as ammunition.

13) To search any and all vehicles parked on or about the property.

J.A. 28-29 (emphasis omitted).

It is fair to gauge the breadth of a warrant with an eye toward the purposes for which it was secured. This astoundingly broad warrant—resembling a general warrant—was chiefly based, as noted, on finding three marijuana stems in the trash. But it empowered the police to seize a host of things seemingly unconnected to marijuana possession. It permitted, for starters, the seizure of any computers, toiletries, or jewelry, and the search of every book, record, and document in the home. *Id.* at paras. 2, 4, 7, 8,

11

11. The connection of such things to the personal possession of marijuana is, to put it gently, tenuous. The warrant also allowed the search and seizure of any cell phones in the home. J.A. 28 at para. 7. The Supreme Court has recognized that "cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse." *Riley v. California*, 134 S. Ct. 2473, 2488-89 (2014). But cell phones also carry more information that can be essential to an investigation than do cigarette packs, wallets, or purses. We need not explore that tension here, as the warrant application lacked any nexus between cell phones and marijuana possession. There is insufficient reason to believe that any cell phone in the home, no matter who owns it, will reveal evidence pertinent to marijuana possession simply because three marijuana stems were found in a nearby trash bag. At some point an inference becomes, in Fourth Amendment terms, an improbable leap.

The warrant also allowed officers "[t]o search any and all persons suspected to be involved in said illegal activities." J.A. 28 at para. 5 (listing this among the items to be seized). But this warrant did not limit those searches to particular people or even to a particular location. "[A]s long as there is good reason to suspect or believe that anyone present at the anticipated scene will probably be a participant in the criminal activity occurring there, presence becomes the descriptive fact satisfying the aim of the Fourth Amendment." *Owens*, 372 F.3d at 276 (internal quotation marks omitted) (analyzing warrant to search all persons in a residence). But the miniscule quantity of marijuana detected in the trash pull, again, does not provide the requisite foundation to search any and all persons in the home, let alone any other location.

12

This case, ultimately, touches on the Fourth Amendment's independent requirement that "all searches and seizures must be reasonable." *Kentucky v. King*, 563 U.S. 452, 459 (2011). Reasonableness has many dimensions. One must be proportionality between the gravity of the offense and the intrusiveness of the search. That was absent here. In this case, the "underlying offense . . . [was] relatively minor," *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984) (assessing exigent circumstances for home entry). First-time possession of less than ten grams of marijuana in Maryland, while unlawful, is a civil infraction "punishable by a fine not exceeding $100." Md. Code Ann., Crim. Law § 5-601(c)(2)(ii) (West 2018). The warrant here, on the other hand, permitted an intrusion that was anything but minor. It foretold a major incursion into a person's belongings and effects. The magnitude of the intrusion relative to the seriousness of any offense "is of central relevance to determining reasonableness," *Maryland v. King*, 569 U.S. 435, 446 (2013), and this is especially the case when "any and all" is the warrant's insistent refrain with respect to almost every category of personalty that might conceivably be in a house.

IV.

The government also asks this court to reverse the district court's suppression order under the good faith exception to the exclusionary rule. See *United States v. Leon*, 468 U.S. 897 (1984). In evaluating the applicability of the good faith exception, we review the district "court's legal conclusions *de novo* and its factual findings for clear error," *United States v. McKenzie-Gude*, 671 F.3d 452, 461 (4th Cir. 2011), assessing "the evidence in the light most favorable to the prevailing party," *United States v. Lull*, 824 F.3d 109, 114-15 (4th Cir. 2016) (internal quotation marks omitted).

*Leon* provides an exception to the exclusionary rule when "officers acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." 468 U.S. at 918. We have frequently addressed the good faith inquiry without reaching the merits in an effort to encourage officers to seek warrants in the first instance. See *United States v. Thomas*, 908 F.3d 68 (4th Cir. 2018). Officers who rely on a warrant issued by a neutral magistrate most often act in good faith. *Leon*, 468 U.S. at 922. Yet police may sometimes run afoul of the Fourth Amendment despite their best efforts not to do so. In those cases, suppressing the evidence would produce "marginal or nonexistent benefits," *id.*, that are plainly outweighed by the "heavy toll" that excluding evidence exacts "on both the judicial system and society at large," *Davis v. United States*, 564 U.S. 229, 237 (2011).

We decline, however, to apply the good faith exception in the present case. We do not at all impugn the subjective good faith of the officer who ran the warrant application through review, including by his superior and a state prosecutor, before submitting it to the magistrate. The prosecutor's and supervisor's review of an application is often helpful in determining good faith. But those reviewers, unlike a neutral magistrate, share the officer's incentives "in the often competitive enterprise of ferreting out crime." *Riley*, 134 S. Ct. at 2482 (internal quotation marks omitted). The prosecutor's and supervisor's review, while unquestionably useful, "cannot be regarded as dispositive" of the good faith inquiry. *Messerschmidt v. Millender*, 565 U.S. 535, 554 (2012). If it were, police departments might be tempted to immunize warrants through perfunctory superior review, thereby displacing the need for "a neutral and detached magistrate" to make an

14

independent assessment of an affidavit's probable cause, *Riley*, 134 S. Ct. at 2482 (internal quotation marks omitted).

The government asks the court to consider information known to the officer but not presented to the magistrate—namely, another officer's comments that Lyles was a drug dealer and that his phone number "popped up," J.A. 201, in a suspected homicide victim's phone. "[U]ncontroverted facts known to [the officer] but inadvertently not presented to the magistrate" are an important part of the good faith inquiry. *McKenzie-Gude*, 671 F.3d at 460. This includes information left out of the application because of a "a simple miscalculation" of what was required for probable cause. *Thomas*, 908 F.3d at 75. It would make little sense, after all, to suppress evidence when the officer did in fact possess probable cause to justify the search. See *id.* at 73. But another officer's vague and conclusory allegation that Lyles was a drug dealer is hardly the sort of uncontroverted evidence that could support a search warrant in view of the manifold deficiencies noted here.

*Leon*'s standard is ultimately an "objective" one. *Id.* at 70. And objectively speaking, what transpired here is not acceptable. What we have before us is a flimsy trash pull that produced scant evidence of a marginal offense but that nonetheless served to justify the indiscriminate rummaging through a household. Law enforcement can do better. The judgment is

*AFFIRMED*.

15