UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-4524

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOHN MOSES BURTON, IV,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News.  Arenda L. Wright Allen, District Judge.  (4:16-cr-00071-AWA-RJK-1)

Argued:  September 27, 2018                         Decided:  December 19, 2018

Before WILKINSON, DUNCAN, and KEENAN, Circuit Judges.

Affirmed by unpublished opinion.  Judge Keenan wrote the opinion, in which Judge Wilkinson and Judge Duncan joined.

**ARGUED:**  Patrick L. Bryant, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Richard Daniel Cooke, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.  **ON BRIEF:**  Geremy C. Kamens, Federal Public Defender, Kirsten R. Kmet, Assistant Federal Public Defender, OFFICE OF THE PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Rachel E. Timm, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C; Dana J. Boente, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

John Moses Burton, IV entered a conditional guilty plea to receipt of child pornography, in violation of 18 U.S.C. § 2252A. He appeals the district court's denial of his motion to suppress evidence found during searches of his two cell phones and his home. Burton raises numerous Fourth Amendment challenges in this appeal, including that: (1) exigent circumstances did not justify the warrantless seizure of the cell phones; and (2) the officers did not reasonably rely on facially valid warrants to search the phones and his home.

Upon our review, we conclude that the officers did not violate Burton's Fourth Amendment rights when they seized the cell phones without a warrant. With respect to the searches of the phones and the home, we hold that the "extreme sanction of exclusion" is inappropriate in this case, because the officers conducted the searches in good faith reliance on two warrants. *United States v. Leon*, 468 U.S. 897, 926 (1984). We therefore affirm the district court's judgment.

I.

Because the district court denied Burton's motion to suppress, we recount the facts in the light most favorable to the government. *United States v. Williams*, 808 F.3d 238, 245 (4th Cir. 2015). Burton first came to the attention of law enforcement authorities in Suffolk, Virginia on July 22, 2011, during an incident that occurred on the premises of a local grocery store to which he was providing equipment maintenance. On that date, a woman reported to police that a man, later identified as Burton, had attempted to take a

3

photograph of her underneath her skirt (an "up-skirt" photo), while she was at the grocery store (the grocery store incident). The woman, G.B., stated that Burton stood "extremely close" to her, "crouched" behind her, and pointed a cell phone toward her skirt. Burton also had a laptop computer with him during the incident.

Burton participated in two interviews with Detective Gary Myrick on a voluntary basis. The first took place at the police station on July 26, 2011, four days after the grocery store incident (the initial interview). Myrick testified that before the initial interview, he was unsure whether Burton actually had taken an up-skirt photo of G.B. Myrick sought to question Burton to determine whether he had a reasonable explanation for his conduct.

During the initial interview, Burton acknowledged crouching behind G.B. at the store with a cell phone in his hand, but denied taking any up-skirt photos of her. Burton also stated that he had two employer-issued[1] cell phones with him during the grocery store incident, and that one of the phones had both a camera and email functionality. Burton brought both phones to the initial interview.

Myrick testified that he did not believe Burton's explanation for his conduct. Myrick "express[ed] [his] skepticism" to Burton during the initial interview and, at the end of the interview, seized both cell phones that Burton had brought with him to the police station. Myrick testified that he thought he had probable cause to seize the phones,

---

[1] The government does not argue on appeal that Burton lacks standing to challenge the seizure and search of the employer-issued cell phones.

4

and that he feared Burton would destroy digital photos, or the phones themselves, if Myrick did not seize them immediately.

Two days later, on July 28, 2011, Myrick sought and obtained a search warrant authorizing the search of "[t]he entire contents of" Burton's two cell phones, including photographs, contact lists, call logs, text messages sent and received, voice mail messages, and memory card (the phone warrant). Searches of the phones revealed multiple up-skirt photos, but no images of G.B.

After the police searched the phones, Myrick and another detective conducted a second interview of Burton on August 15, 2011. During that interview, Burton admitted that he had intended to take an up-skirt photo of G.B. at the grocery store, but had not completed the act. Burton also stated that he had taken up-skirt photos of other women at multiple different locations.

On August 17, 2011, Myrick obtained a warrant to search Burton's residence (the home warrant). In his supporting affidavit, Myrick described the results of the investigation, including the two interviews with Burton and the evidence recovered from the cell phones. The home warrant authorized the search of

> [a]ny computer, computer related storage devices to include flashdrives, memory devices, external hard drives, cameras, cell phones, laptops, and any printed photographs located on the premises at the time of the search. The entire contents of each computer related, camera, laptop, cellphone collected.

Upon executing the home warrant, officers recovered numerous electronic devices from Burton's residence. Forensic examination of some of the devices revealed images of child pornography.

5

Burton was charged with nine counts of receipt of child pornography, in violation of 18 U.S.C. § 2252A. He filed a motion to suppress, arguing that the initial seizure of the cell phones was unlawful, and that the warrants to search his phones and residence violated the Fourth Amendment. The district court concluded that the warrantless seizure of the phones was justified by the exigent circumstances exception to the warrant requirement, and that Myrick had not delayed unduly in obtaining a warrant. The court also held that although both the phone and home warrants were unconstitutionally overbroad, the good faith exception applied under the facts presented. The court denied Burton's suppression motion, and Burton entered a conditional guilty plea to a single count of receipt of child pornography. Burton now appeals the denial of his suppression motion.

II.

We begin our analysis by considering Burton's challenges to the seizure of his cell phones, and later proceed to evaluate the reasonableness of the officers' reliance on the phone and home warrants. When considering an appeal from the denial of a motion to suppress, we review the district court's legal determinations de novo. *United States v. McKenzie-Gude*, 671 F.3d 452, 458 (4th Cir. 2011). We review the court's factual findings for clear error. *Id.*

A.

Burton argues that the exigent circumstances exception to the warrant requirement is inapplicable to the seizure of the cell phones in this case, because the officers lacked

any reason to believe that he might destroy evidence from the phones before a warrant could be obtained. In Burton's view, applying the good faith exception here would allow the warrantless seizures of cell phones and other electronic devices in nearly every case involving digital evidence. Alternatively, Burton argues that even if the initial seizure was valid, the officers unduly delayed obtaining the phone warrant. We disagree with Burton's arguments.

As an exception to the general warrant requirement, law enforcement officers may seize an item without a warrant if the officers have probable cause to believe that the item contains contraband or evidence of a crime, and "the exigencies of the circumstances demand it." *United States v. Place*, 462 U.S. 696, 701 (1983). To determine whether exigent circumstances justify a warrantless seizure, we consider whether: (1) the police had probable cause to believe that the item seized contained contraband or evidence of a crime; (2) the police had "good reason to fear" that, absent such seizure, the defendant would destroy material evidence before the officers could obtain a warrant; and (3) the police "made reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy." *Illinois v. McArthur*, 531 U.S. 326, 331-33 (2001); *see also United States v. Cephas*, 254 F.3d 488, 495 (4th Cir. 2001) (explaining exigent circumstances justifying a warrantless entry into a home).

A warrantless seizure prompted by exigent circumstances is reasonable if the restraint lasted for "no longer than reasonably necessary for the police, acting with diligence, to obtain the warrant." *McArthur*, 531 U.S. at 332-33. The failure of officers to offer a "good explanation" for delay in seeking a warrant weighs against a finding of

7

reasonableness. *United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012). Ultimately, we will uphold a temporary warrantless seizure if it "was supported by probable cause[,] and was designed to prevent the loss of evidence while the police diligently obtained a warrant in a reasonable period of time." *McArthur*, 531 U.S. at 334; *see also Burgard*, 675 F.3d at 1033.

We conclude that the warrantless seizure of Burton's cell phones after the initial interview was justified under the exigent circumstances exception to the warrant requirement. The police had probable cause at the completion of the initial interview to seize Burton's cell phones, a fact that Burton does not challenge. And based on the circumstances presented here, Officer Myrick had "good reason to fear" that Burton would destroy digital evidence if allowed to depart the police station with the phones. *See McArthur*, 531 U.S. at 332.

Following the initial interview, Burton was aware that he was the subject of an investigation into his use of cell phones to take up-skirt photos, and also knew that Myrick was skeptical of Burton's description of the grocery store incident. *See Cephas*, 254 F.3d at 495 (fact that a suspect is "aware that the police are on [his] trail" supports an exigent circumstances finding (quoting *United States v. Turner*, 650 F.3d 526, 528 (4th Cir. 1981)). Given the ease with which Burton could have deleted, transferred, or otherwise removed the digital photos from the phones, Myrick reasonably assumed that

Burton might destroy any evidence contained on the phones, or the devices themselves.[2]

And finally, Myrick made sufficiently "reasonable efforts" to balance law-enforcement needs with Burton's Fourth Amendment rights. *McArthur*, 531 U.S. at 332. Myrick conducted a voluntary interview with Burton, did not immediately place Burton under arrest, and waited to seize the phones until after investigating the victim's allegations and providing Burton with an opportunity to give his version of the events.[3] *See generally Kentucky v. King*, 563 U.S. 452, 466-67 (2011).

We further hold that the two-day delay between the warrantless seizure and the issuance of the warrant was reasonable. First, the duration of the warrantless seizure was two days, far shorter than other instances in which courts have deemed a delay unreasonable. *See, e.g.*, *United States v. Mitchell*, 565 F.3d 1347, 1352-53 (11th Cir. 2009) (21-day delay unreasonable). Indeed, courts have held that longer delays in obtaining a warrant were reasonable under the Fourth Amendment. *See, e.g.*, *Burgard*, 675 F.3d at 1034-35 (six-day delay reasonable); *United States v. Laist*, 702 F.3d 608, 616-17 (11th Cir. 2012) (25-day delay reasonable given officer's diligence). And

---

[2] We express no opinion on the question whether the exigent circumstances exception might justify warrantless seizures of cell phones under factual scenarios not presented here.

[3] Contrary to Burton's suggestion at oral argument, the officers were not required to seize the cell phones immediately after the grocery store incident occurred. Myrick testified that before the initial interview, he thought that Burton might have a legitimate explanation for his conduct at the grocery store. And, in any event, the Supreme Court has explained that police are not obligated under the Fourth Amendment "to apply for a search warrant at the earliest possible time after obtaining probable cause." *Kentucky v. King*, 563 U.S. 452, 467 (2011).

importantly, as noted above, Burton does not contest that Myrick had probable cause to seize the phones. *See Burgard*, 675 F.3d at 1033 ("All else being equal, the Fourth Amendment will tolerate greater delays after probable-cause seizures," compared with seizures supported by a lesser degree of suspicion). Under these circumstances, we conclude that the two-day duration of the warrantless seizure was a relatively minor intrusion into Burton's possessory interests.

The record also shows that Myrick acted with reasonable diligence in seeking the warrant. Myrick testified that immediately after seizing the phones on July 26, 2011, he secured and logged them into the police department's "Property and Evidence" unit. On July 27, 2011, Myrick "spent the entire day" investigating other "priority" law enforcement cases involving multiple larcenies and burglaries in the area. Myrick obtained a search warrant for the phones on July 28, 2011, two days after the initial interview and seizure. Accordingly, we conclude that Myrick offered a "good explanation," namely, his other investigative responsibilities, for the short amount of time that passed between the seizure and issuance of the warrant. *Id.*; *see also United States v. Christie*, 717 F.3d 1156, 1163-64 (10th Cir. 2013) (holding that the government's "colorable interest in prioritizing law enforcement efforts" can render a delay reasonable); *Mitchell*, 565 F.3d at 1353 (recognizing that "overriding circumstances . . . necessitating the diversion of law enforcement personnel to another case" might justify some delay in seeking a warrant).

And finally, we decline Burton's suggestion that we require officers to set aside all other law enforcement obligations to obtain a warrant as quickly as possible. The

10

"ultimate touchstone of the Fourth Amendment is 'reasonableness,'" not perfection. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (citation omitted); *Burgard*, 675 F.3d at 1034 ("[P]olice imperfection is not enough to warrant reversal."); *see also United States v. Sullivan*, 797 F.3d 623, 634 (9th Cir. 2015) ("Even if the government could have moved faster to obtain a search warrant, the government is not required to pursue the least intrusive course of action." (citation and internal quotation marks omitted)). Here, the record demonstrates that Myrick acted with the due diligence required by the Fourth Amendment. We therefore conclude that the initial seizure of Burton's cell phones was justified by the exigent circumstances exception, and that the two-day duration of the warrantless seizure was reasonable.

## B.

We next consider whether the district court erred in applying the good faith exception to evidence obtained from the phone and home warrants, and in denying Burton's motion to suppress on that basis. We will assume, without deciding, that the warrants were overbroad in violation of the Fourth Amendment. Therefore, we proceed directly to the good faith analysis. *See United States v. Andrews*, 577 F.3d 231, 235 (4th Cir. 2009).

### i.

We begin by reciting the principles underlying the good faith exception to the exclusionary rule. The "sole purpose" of the exclusionary rule is to deter future violations of the Fourth Amendment. *Davis v. United States*, 564 U.S. 229, 236-37 (2011). Accordingly, we will not apply the exclusionary rule to evidence that a law

11

enforcement officer has obtained "in objectively reasonable reliance on" a search warrant. *Leon*, 468 U.S. at 922. Under this good faith exception to the exclusionary rule, "searches conducted 'pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search.'" *United States v. Williams*, 548 F.3d 311, 317 (4th Cir. 2008) (quoting *Leon*, 468 U.S. at 922).

Although we rarely will suppress evidence obtained from the proper execution of a search warrant, we have recognized four limited instances in which the good faith exception does not apply:

> (1) when the affiant based his application on knowing or reckless falsity; (2) when the judicial officer wholly abandoned his role as a neutral and detached decision maker and served merely as a 'rubber stamp' for the police; (3) when the affidavit supporting the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant was so facially deficient that the executing officers could not reasonably have presumed that the warrant was valid.

*United States v. Wellman*, 663 F.3d 224, 228-29 (4th Cir. 2011). We will address these limitations on imposing the good faith exception in the context of Burton's specific challenges.

ii.

Addressing the good faith exception, Burton contends that the overbreadth of the phone warrant was so apparent that the officers' reliance on the warrant was objectively unreasonable. Burton asserts that the warrant's overbreadth was obvious because it authorized the search of the "entire contents of the cellphones," a scope far greater than

12

necessary to locate the photos allegedly taken during the grocery store incident. Thus, Burton asserts that the "extreme sanction of exclusion" is appropriate here. *Leon*, 468 U.S. at 916. We disagree.

The Fourth Amendment requires that a warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Accordingly, "the scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that [the object] may be found." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987) (citation and internal quotation marks omitted). Under certain circumstances, "a warrant may be so facially deficient [by] failing to particularize the place to be searched or the things to be seized[,] that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923.

Here, as noted by the district court, the good faith exception must be evaluated in the context of the emerging cell phone technology and related legal precedent in place at the time the search occurred in 2011. At that time, neither our precedent nor that of the Supreme Court had developed the robust privacy protections for cell phone users that are applicable today. For example, until the Supreme Court's 2014 decision in *Riley v. California*, 134 S. Ct. 2473 (2014), officers could search cell phones without a warrant when the searches were conducted incident to a valid arrest. *See United States v. Murphy*, 552 F.3d 405, 411-12 (4th Cir. 2009), *abrogated by Riley*, 134 S. Ct. 2473. In holding that a warrant is required in such circumstances, the Court in *Riley* reasoned that the "immense storage capacity" of cell phones, as well as the breadth and sensitivity of information that can be stored on such devices, justify more significant Fourth

13

Amendment scrutiny. *Riley*, 134 S. Ct. at 2489-90. And only this year did the Supreme Court hold that historical cell phone records showing the details of a user's physical movements constituted a search deserving of Fourth Amendment protection. *Carpenter v. United States*, 138 S. Ct. 2206, 2220 (2018); *see also United States v. Graham*, 824 F.3d 421, 427-28 (4th Cir. 2016) (en banc) (holding that no warrant was required to obtain historical cell site location information), *abrogated by Carpenter*, 138 S. Ct. 2206.

Under these circumstances, we cannot conclude that the officers acted unreasonably in failing to appreciate the breadth of the phone warrant at the time it was issued. *Cf. Davis*, 564 U.S. at 239-41 (good faith exception applies if reasonable reliance on binding precedent). We also agree with the district court that nothing in the record suggests that the officers engaged in any reckless or grossly negligent acts in conducting their investigation and in seeking the phone warrant. *See id.* at 238; *McKenzie-Gude*, 671 F.3d at 461. Given the state of the law in 2011, as well as the developing nature of cell phone technology, we conclude that application of the exclusionary rule in this case would not deter officers from committing violations of the Fourth Amendment. *See Davis*, 564 U.S. at 246. Therefore, based on the totality of the circumstances, *see McKenzie-Gude*, 671 F.3d at 459, we hold that the officers acted in objective, good-faith reliance on the phone warrant. Accordingly, the district court did not err in denying Burton's motion to suppress evidence obtained from the cell phones.

iii.

Burton likewise challenges application of the good faith exception to the home warrant. He asserts that the warrant was objectively unreasonable in scope, because the

14

warrant authorized police to search for "any" computer or other electronic devices located in the home, as well as the "entire contents" of such devices. Burton also argues that the home warrant was not supported by probable cause, because the supporting affidavit failed to establish a nexus between the suspected crime and Burton's home. Thus, in Burton's view, the "extreme sanction of exclusion" is justified here. *Leon*, 468 U.S. at 916. We disagree with Burton's arguments.

A magistrate's probable cause determination is "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). When seeking a search warrant for a residence, an officer must present evidence linking the suspected criminal activity to the defendant's home. *See United States v. Doyle*, 650 F.3d 460, 471 (4th Cir. 2011). "[T]he nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." *Id.* (quoting *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988)).

In assessing whether the good faith exception applies to a search based on a warrant, we accord "great deference" to a magistrate's determination of probable cause, given that "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause." *Leon*, 468 U.S. at 914 (citation omitted). And we are not limited in our inquiry to the "four corners of a deficient affidavit," but may consider other facts known to the officers that were not included in the warrant

application. *McKenzie-Gude*, 671 F.3d at 459; *see also United States v. Thomas*, 908 F.3d 68, 72-75 (4th Cir. 2018).

At the time Myrick applied for the home warrant, the officers had obtained details of the grocery store incident from G.B. and from certain employees at the store, as well as Burton's admission that he had interacted with the victim. Officers also had searched Burton's cell phones. As noted above, those searches revealed up-skirt images of women other than G.B., but did not reveal the photos allegedly taken during the grocery store incident. Burton had confessed that he took up-skirt photos of women at various locations, and had intended to take one of G.B. as well. All these facts were detailed in Myrick's affidavit. Additionally, although not included in the affidavit, Myrick knew that Burton had a laptop with him during the grocery store incident, and that one of Burton's cell phones had email functionality.

Under these particular facts and circumstances, we conclude that the officers' reliance on the home warrant was objectively reasonable. Although the home warrant authorized the police to search the "entire contents" of the categories of items listed, this broad scope, standing alone, did not render the officers' reliance on the home warrant objectively unreasonable. Because the officers had not recovered photos of G.B. directly from the phones, the officers reasonably could have believed that the evidence had been transferred to a file in an electronic device, or electronic storage device, located in Burton's home. Notably, the "nature of [digital photos] and the normal inferences of where one would likely keep" such images included the laptop the officers knew Burton

possessed, which had not yet been seized, as well as other electronic devices large and small. *Doyle*, 650 F.3d at 471 (citation omitted).

Our conclusion is not altered by Burton's reliance on the decision of the D.C. Circuit in *United States v. Griffith*, 867 F.3d 1265 (D.C. Cir. 2017). The court in *Griffith* declined to apply the good faith exception when a warrant authorized a search of a home for "all electronic devices," which warrant the court concluded was unconstitutionally overbroad and lacked probable cause. *Id.* at 1269, 1275, 1277-78. The defendant in *Griffith* was suspected of a year-old gang-related homicide and had been incarcerated for much of the year preceding the search. *Id.* at 1268-69. The officers lacked any basis to believe that the defendant owned a cell phone or any other electronic devices. *Id.* at 1272-73. Nor did officers have reason to believe that any such devices would contain incriminating evidence and would be found in his home. *Id.* at 1272-73, 1278. In contrast, here, the nature of Burton's suspected conduct of unlawfully photographing another necessarily would involve the production of digital evidence. The officers also knew that Burton possessed multiple electronic devices, one of which had not been recovered. This evidence was sufficient to render the officers' reliance on the home warrant objectively reasonable.

In sum, based on the totality of the circumstances, we conclude that the officers reasonably relied on the home warrant to search Burton's home for electronic devices to which digital evidence could have been transferred. Accordingly, we hold that the district court properly applied the good faith exception to evidence seized pursuant to the home warrant.

III.

For these reasons, we conclude that the district court did not err in denying Burton's motion to suppress, and we affirm the district court's judgment.

*AFFIRMED*